UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| TRISTAN JAMES HALL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 16-304-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CITY OF WILLIAMSBURG, | ) | **MEMORANDUM OPINON** |
| KENTUCKY, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Tristan James Hall ("Hall") alleges that the defendants violated his constitutional rights by arresting and prosecuting him on a number of charges. [Record No. 31] He also asserts state law claims arising out of the same alleged misconduct. [*Id.*] This matter is pending for consideration of four motions to dismiss filed by Defendants Richard Baxter ("Baxter") [Record No. 34], Allen Trimble ("Trimble") [Record No. 36], Jackie Steele ("Steele") [Record No. 38], and Robert Hammons ("Hammons") [Record No. 39]. The defendants argue that Hall's claims against them should be dismissed on grounds of statute of limitations, immunity, and Hall's failure to properly allege sufficient facts to state a plausible claim. Hall has filed a consolidated response to these motions. [Record No. 55] He has also requested that the motions be evaluated as motions for summary judgment and that he be allowed discovery to assist him in responding under this standard. [Record No. 61]

For the reasons that follow, the defendants' motions will be granted, the claims against them will be dismissed. The plaintiff's motion for discovery will be denied.

# I.

Hall's claims are based on a 570-day period during which he was incarcerated in some form as a result of several criminal charges.  He dealt with three different prosecutors and was investigated (primarily) by two different law enforcement officers, each of whom is named as a defendant in this action.  Hall was charged with six crimes during this period:  solicitation of murder, intimidation of a legal participant (later re-charged as retaliation against a legal participant), hindering prosecution, contempt, harassing communications, and insurance fraud.  Hall pled guilty to the hindering and contempt charges.  All other charges were ultimately dismissed.

## A.    The Solicitation Charge

The Amended Complaint ("Complaint") alleges that, in January 2013, an anonymous person using the pseudonym "Serious as a Heart Attack" posted on an internet forum (Topix) that he or she would "pay someone $5000 cash for the murder and concealment of Melissa Jones [sic] body . . . ."  [Record No. 31, ¶ 17]  In response to a search warrant, Topix provided law enforcement with the internet service provider and internet protocol ("IP") address from which the post originated.  [*Id*. at ¶ 19]  Law enforcement then subpoenaed the service provider (Time Warner) which identified Hall as the subscriber to the IP address.  [*Id*. at ¶ 21]

The investigation of the Topix post was transferred to Defendant Baxter, a law enforcement officer, in May 2013.  [*Id*. at ¶ 23]  Baxter investigated the post and identified the target of the post as Melissa Jones.  [*Id*. at ¶ 24]  Defendant Trimble, the Commonweath Attorney for Whitley and McCreary Counties, Kentucky, instructed Baxter to obtain an arrest warrant on May 15, 2013.  [*Id*. at ¶ 26]  Thereafter, the district court then issued a criminal

complaint that charged Hall with solicitation to commit murder in violation of KRS 507.020.[1] [Record No. 34, Ex. 1]

Baxter arrested Hall on the criminal complaint in May 2013 and Hall was remanded into custody. [Record No. 31, ¶ 27] The local news then reported Hall's arrest, stating that he had been charged with "murder." [*Id*. at ¶ 28] Hall was arraigned on May 17, 2013. The court denied his bond request after determining that Hall was a danger to the public. [*Id*. at ¶ 29]

Later, during a preliminary hearing, Baxter testified that Melissa Jones viewed the Topix post as a serious threat. [*Id*. at ¶ 30] However, Baxter had not personally spoken to Jones. Further, the other law enforcement officer who had investigated the case originally reported that Jones could not identify any individuals who would have created the Topix post. [*Id*. at ¶¶ 30, 36] Baxter also testified that Hall had a concealed carry weapons permit. [*Id*. at ¶ 35] The court set bail in the amount of $1,000,000 based, in part, on an *ex parte* request by Defendant Trimble. [*Id*. at ¶ 30]

Hall's solicitation charge was then presented to the grand jury. [*Id*. at ¶ 35] Baxter testified at the hearing that Hall had a concealed carry permit. [*Id*.] The grand jury indicted Hall on the solicitation charge and Hall was presented with the indictment on June 17, 2013. [*Id*. at ¶ 31]

By April 2015, Trimble was no longer prosecuting the charge. Defendant Steele, also a prosecutor for the Commonwealth, had been appointed to replace him. [*Id*. at ¶ 46] The

---

[1]     Hall alleges that the arrest warrant charged Hall with the crime of murder. [Record No. 31, ¶ 25] However, this allegation is directly contradicted by the criminal complaint that Defendant Baxter attached to his motion to dismiss. [Record No. 34, Ex. 1] As will be discussed, the Court is permitted to consider Baxter's exhibit and will rely on the information that it contains rather than assuming the truth of Hall's contrary allegation.

court released Hall from home incarceration and removed all bond conditions on September 10, 2015.  [*Id*. at ¶ 138]  The court granted Steele's motion to dismiss the charge on February 11, 2016.  [*Id*. at ¶ 48]

### B.   The Intimidation/Retaliation Charges

Prior to his arrest and indictment on the solicitation charge, Hall had been admitted to Dayton Law School ("Dayton").  [*Id*. at ¶ 56]  He did not disclose the arrest to Dayton, and Dayton rescinded his acceptance in May 2014 after learning of the arrest.  [*Id*. at ¶ 57]  Hall suspected that Dayton rescinded his acceptance because Trimble "made contact with the law school to inform it of Hall's charges, in an effort to sabotage Hall's acceptance and thus his future career as a lawyer."  [*Id*. at ¶ 60]  In June 2014, Hall filed a bar complaint against Trimble based on Hall's belief that Trimble had reported his arrest.  [*Id*. at ¶ 62]

Hall was in a relationship with Angela Reeves during much of the time period at issue in this case.  Reeves contacted Trimble on several separate occasions relating to Trimble's suspected involvement with Hall's law school acceptance as well as the solicitation prosecution.  [*Id*. at ¶¶ 58-63]  On June 11, 2014, Reeves left Trimble a voice mail message stating that if he did not find Hall guilty of the solicitation charge, she would deliver Hall's "head to [his] lobby with his blood all over it."  [*Id*. at ¶ 61]

Trimble "initiated" a charge for intimidation of a legal participant against Hall. Defendant Wayne Bird, a law enforcement officer, executed an arrest warrant on this charge on June 24, 2014.  [*Id*. at ¶ 64]  The warrant alleged that Hall and Reeves placed several threatening phone calls to Trimble in an effort to intimidate him.  [*Id*. at ¶ 65]  On June 25, 2014, Trimble moved the court to set aside Hall's bond on the solicitation charge due to the arrest for intimidation of a legal participant.  [*Id*. at ¶ 72]  Trimble later told the media that the

calls on which the charge was based suggested actions that Hall was going to take against Trimble due to his involvement with the solicitation prosecution.  [*Id*. at ¶ 73]

Trimble recused from the prosecution of the intimidation charge and Defendant Steele was assigned to prosecute the matter on August 24, 2014.  [*Id*. at ¶ 75]  The Commonwealth dismissed the intimidation charge on August 29, 2015, due to failure to indict within 60 days. [*Id*. at ¶ 76]

The Commonwealth later charged Hall with retaliation against a legal participant. Steele presented this charge to the grand jury on February 2, 2015.  [*Id*. at ¶ 82]  During this proceeding, Hall claims that "Trimble and/or Steele" directed the law enforcement officer who investigated the charge, Defendant Bird, to give "false and perjured testimony."  [*Id*.]  The grand jury indicted Hall on this charge on March 2, 2015.  [*Id*. at 83]  The Commonwealth later moved to dismiss the charge on February 11, 2016.  [*Id*. at ¶ 87]

## C.    The Hindering Prosecution and Contempt Charges

Defendant Bird executed a search warrant on Hall's residence when he arrested Hall on the intimidation charge on June 24, 2014.  [*Id*. at ¶ 88]  After arresting Hall, Bird asked whether he knew of Reeves's location.  [*Id*. at ¶ 90]  Hall did not provide her location but instead informed Bird that he and Reeves had been separated for several months.  [*Id*. at ¶ 91] Reeves was later found hiding in a closet on the premises.  [*Id*.]

Based on this incident, Hall was served with an arrest warrant for hindering the prosecution or apprehension of a witness on June 25, 2014.  [*Id*. at ¶ 92]  The grand jury indicted Hall.  Defendant Hammons, an attorney for the Commonwealth, was appointed to prosecute this charge.  [*Id*. at ¶ 98]

The court discharged Hall's bond on September 10, 2015, and Hall was no longer incarcerated in any form as of that date. [*Id*. at ¶ 102] In October 2016, although Hall was no longer subject to bond, the court added conditions that, among other things, prohibited Hall from contacting Hammons. [*Id*. at ¶ 102] Later that day, "someone posing as Hall sent an email to prosecutor Hammons . . . ." [*Id*. at ¶ 104] Hammons then moved to court to revoke Hall's bond and hold him in contempt for violating the bond condition prohibiting contact. [*Id*. at ¶ 105] Hall agreed to enter a guilty plea to the hindering and contempt charges on November 21, 2016. [*Id*. at ¶ 111] He has since appealed his plea and that appeal was pending at the time that he filed this action. [*Id*. at ¶ 116]

### C.    The Harassing Communications Charge

Reeves contacted Bird on January 19, 2015, to report that Hall had been contacting her with intent to intimidate, harass, annoy, or alarm her. [*Id*. at ¶ 117] Reeves then filed a complaint and Hall was charged with illegal harassing communications and arrested on this charge. [*Id*. at ¶ 118] The Commonwealth, through Hammons, moved to dismiss the charge after determining that Reeves's actions were "inconsistent with her allegations" against Hall. The court granted the motion on March 21, 2016. [*Id*. at ¶ 122]

### D.    The Insurance Fraud Charge

The insurance fraud charge was based on Hall's report to his insurance company that Reeves had lost his fur coat. [*Id*. at ¶ 125] Hall reported the loss in 2013 and his insurance company initiated an investigation. [*Id*. at ¶ 126] The Commonwealth later presented the matter to the grand jury. [*Id*. at ¶ 132] The Commonwealth presented a witness from the Kentucky Department of Insurance who testified, based in part on a report that one of the insurance company's employees had prepared during the investigation. [*Id*.] Hall was served

with an indictment on this charge on March 2, 2015. [*Id.* at ¶ 123] The Commonwealth dismissed the charge on November 12, 2015. [*Id.* at ¶ 140]

In summary, Hall argues that he is innocent of all charges and that the defendants prosecuted him without probable cause. He further contends that the defendants engaged in misconduct throughout the criminal proceedings that violated his constitutional rights and that their actions also amounted to tortious conduct under state law. He raises several federal claims under § 1983 and state tort claims against all defendants.

## II.

The defendants have each filed motions to dismiss. Defendant Baxter has filed a motion to dismiss or, in the alternative, a motion for summary judgment to which he has attached three exhibits. [Record No. 34] Hall has also filed 80 exhibits to accompany his consolidated response to the defendants' motions. [Record Nos. 58, 59, 60] Hall argues that the Court should treat the motions to dismiss as motions for summary judgment because the exhibits address matters outside the pleadings. He further requests discovery to allow him to properly address the motions for summary judgment. [Record No. 61]

Where "matters outside the pleadings are presented to and not excluded by the court, the motion will be treated as one for summary judgment under Rule 56" and the "parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). However, district courts have "complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." *Barrett v. Harrington*, 130 F.3d 246, 253 (6th Cir. 1997) (internal quotation marks and citation omitted). Further, "a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to the

defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims therein without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011) (internal quotation marks and citation omitted).

The defendants' motions will be evaluated as motions to dismiss rather than as motions for summary judgment. And as noted previously, Hall's motion for discovery will be denied. The Court has considered the criminal complaint issued on the solicitation charge (attached to Baxter's motion to dismiss) because it is a public record and is central to the plaintiff's claims. The Court will thus adopt the information contained in the criminal complaint—that Hall was arrested for solicitation of murder—rather than assuming the truth of Hall's contrary allegation that he was arrested for murder. [Record No. 31, ¶ 25; Record No. 34, Ex. 1] However, the Court will decline to consider the remaining exhibits because they address matters beyond the Complaint.

When evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although a complaint need not contain "detailed factual allegations" to survive a motion to dismiss, the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).

Further, in considering a Rule 12(b)(6) motion, the Court need not accept as true legal conclusions cast in the form of factual allegations if those conclusions cannot be plausibly drawn from the facts as alleged. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that, in reviewing a motion to dismiss, the district court "must take all the factual allegations in the complaint as true," but that the court is "not bound to accept as true a legal conclusion couched as a factual allegation"). Thus, Rule 12(b)(6) essentially "allows the Court to dismiss, on the basis of a dispositive issue of law, meritless cases which would otherwise waste judicial resources and result in unnecessary discovery." *Glassman, Edwards, Wade & Wyatt, P.C. v. Wolf Haldenstein Adler Freeman & Herz, LLP*, 601 F. Supp. 2d 991, 997 (W.D. Tenn. 2009).

## III.

Hall raises the following federal claims against all defendants: malicious prosecution, deprivation of liberty[2], behavior that shocks the conscience, a civil rights conspiracy, and abuse of process. His state law claims (again, asserted against all defendants) include: intentional infliction of emotional distress, negligent infliction of emotional distress, negligence,

---

[2] The alleged "deprivation of liberty" is asserted as a single claim, but alleges violations of several separate constitutional provisions: unreasonable search and seizure in violation of the Fourth Amendment, failure to provide a speedy trial in violation of the Sixth Amendment, infliction of cruel and unusual punishment in violation of the Eighth Amendment, and attempting to coerce confessions in violation of the Fifth Amendment. As explained below, these alleged violations of specific constitutional provisions will be addressed as distinct claims.

defamation, false imprisonment, malicious prosecution, abuse of process, and respondeat superior. The defendants argue that all of the claims against them should be dismissed on the basis of the applicable statute of limitations, immunity, and Hall's failure to allege sufficient factual matter to state a plausible claim to relief. The defendants' motions will be granted for the following reasons.

## A. Official Immunity

Hall's Complaint names the defendants in their official and individual capacities. [Record No. 31] The defendants argue that the claims against them in their official capacities should be dismissed because they are entitled to sovereign immunity. Specifically, "[a] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted). Accordingly, a defendant sued in his official capacity is entitled to the same immunity to which the official's office is entitled, and the claims are "barred by the Eleventh Amendment, absent a waiver." *Cady v. Arenac County*, 574 F.3d 334, 344 (6th Cir. 2009) (internal quotation marks and citation omitted); *see also Yanero v. Davis*, 65 S.W.3d 510, 517 (Ky. 2001). Hall concedes that his claims against the defendants in their official capacities are barred by immunity and subject to dismissal.

## B. Statute of Limitations

The defendants contend that some or all of Hall's claims are barred by the applicable statutes of limitations. The argument that a particular claim is time-barred is an affirmative defense on which the defendant bears the burden of proof. *Rembisz v. Lew*, 590 F. App'x 501, 503 (6th Cir. 2014) (citation omitted). However, dismissing a claim pursuant to a statute of

limitations defense is appropriate if "the allegations in the complaint affirmatively show that the claim is time-barred." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).

### 1. Federal Claims

Claims asserted under § 1983 are governed by the applicable state law statute of limitations. *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (citations omitted). Accordingly, Hall's § 1983 claims are subject to Kentucky's statute of limitations for personal injuries, which requires that the action be "brought within one year after the cause of action accrues." KRS 413.140(1). Hall filed his claims on December 28, 2016. [Record No. 1] Accordingly, all claims that accrued more than one year prior to this date are barred by the statute of limitations.

Federal law controls the determination of when the statute begins to run for a particular claim. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). Under federal law, a § 1983 action accrues "when the plaintiff knew or through the exercise of reasonable diligence should have known of the injury that forms the basis of his action." *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003) (citation omitted). The analysis of when the plaintiff should have known of his injury is an objective one based on the occurrence of the event that "should have alerted the typical lay person to protect his or her rights." *Id.* (internal quotation marks and citation omitted). It is thus necessary to identify the alleged injuries that should have made Hall "aware that [his] rights had been violated and therefore started the clock on [his] statute of limitations." *Printup v. Director, Ohio Department of Job and Family Services*, 654 F. App'x 781, 785 (6th Cir. 2016). The accrual date of each of Hall's claims will be considered in turn.

Hall's claim for malicious prosecution is timely. A claim for malicious prosecution does not accrue until the plaintiff knows or has reason to know that the criminal proceeding

has terminated in his favor. *King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017). According to the Complaint, the intimidation charge was dismissed in August 2014 [Record No. 31, ¶ 75]; the fraudulent insurance charge was dismissed in November 2015 [*Id.* at ¶ 140]; the retaliation charge was dismissed in February 2016 [*Id.* at ¶ 87]; the solicitation charge was dismissed in February 2016 [*Id.* at ¶ 49]; and the harassing charge was dismissed in March 2016 [*Id.* at ¶ 122]. Any claim for malicious prosecution on the intimidation or fraudulent insurance charge is barred by the statute of limitations because that claim accrued prior to December 2015, more than one year before Hall filed his claims in December 2016. However, his malicious prosecution claims against Defendant Steele for the retaliation charge; Defendant Hammons for the Harassing charge; and Defendants Trimble and Baxter for the solicitation charge are not time-barred because these claims were filed within a year of the date that the respective charges were dismissed.

Hall alleges within his single claim for a deprivation of liberty that the defendants violated his Fourth Amendment right to be from unreasonable searches and seizures, his Sixth Amendment right to a speedy trial, and his Eight Amendment right to be free from cruel and unusual punishment.[3] "[I]f a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (internal quotation marks and citation omitted). Accordingly, Hall's

---

[3] Hall also states that the defendants sought to obtain coerced confessions in violation of the Fifth Amendment. However, the Court was unable to locate any factual allegations in support of this claim. To the extent that Hall intended to assert this as a separate claim, he failed to state a claim in accordance with the *Twombly* and *Iqbal* pleading standards.

Fourth, Sixth, and Eighth Amendment claims will be considered separately from his deprivation of liberty claim.

Hall's Fourth Amendment search and seizure claim is not timely. Hall was arrested on all charges well before December 2015. Claims for false arrest under the Fourth Amendment accrue once the plaintiff is being held pursuant to legal process. *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007). Hall was no longer held in custody when his bond was discharged in September 2015. [Record No. 31, ¶ 102] Thus, his claim for false arrest accrued at some point prior to this date and is time-barred. Likewise, the only search alleged in the Complaint occurred in June 2014, so he was aware of the injury underlying his Fourth Amendment claim at this point such that his claim had accrued. [*Id*. at ¶ 88] Hall's Fourth Amendment claim accrued prior to December 2015 and is barred by the statute of limitations.

Hall does not specify the conduct that provides the basis for his Eighth Amendment claim. And it is unclear what conduct could possibly provide a basis for this claim, since the Eighth Amendment's protections do not apply until after the defendant has been convicted. *See Pelfrey v. Chambers*, 43 F.3d 1034, 1036 (6th Cir. 1995) (citation omitted). The Complaint contains no allegations of punishment following his only conviction—the guilty plea on the hindering and contempt charges in November 2016. However, absent direction from Hall, the Court assumes that this claim is based on Hall's allegations that Trimble directed another prisoner to physically harm him. This allegedly occurred in 2014, well over a year before Hall filed his claim. [*Id*. at ¶ 148] Accordingly, it is time-barred.

Hall's speedy trial claim does not appear to be barred by the statute of limitations. The injury stated by this claim is that Hall did not receive a trial on the charges in accordance with the Sixth Amendment. Accordingly, Hall's injury continued for the duration of the period that

the charges were pending but Hall was not provided with a trial. Therefore, this claim did not accrue until the charges were dismissed in 2016 and is timely.

Hall's claims against Hammons for deprivation of liberty, behavior that shocks the conscience, and abuse of process are timely. Hall does not specifically allege which of Hammons's actions provide the factual basis for these claims. However, the Complaint alleges that, on October 25, 2016, Hammons fabricated an email from Hall and later used that email to move the court to revoke Hall's bond and hold Hall in contempt for violating bond conditions prohibiting Hall from contacting Hammons. [Record No. 31, ¶¶ 104-10] The Court will assume that Hall's claims are based, at least in part, on this conduct. Because Hall filed these claims within a year of this occurrence, they are timely.

Hall's claims against Trimble, Steele, and Baxter for deprivation of liberty and behavior that shocks the conscience are barred by the statute of limitations. The injury underlying Hall's deprivation of liberty claim is that the defendants subjected him to incarceration—deprived him of his liberty—by taking various improper actions such as fabricating evidence, failing to properly evaluate the evidence that was obtained through searches, and attempting to coerce guilty pleas. Likewise, his claim that they engaged in behavior that shocks the conscience addresses the same injury and is based on the defendants' actions of incarcerating Hall while they took various improper actions while prosecuting his case.

According to the Complaint, the court discharged Hall's bond on September 10, 2015. [Record No. 31, ¶ 102] Hall was no longer confined as of this date and his alleged injury of being improperly incarcerated had concluded. Moreover, all of the specific allegations of misconduct relating to these defendants occurred prior to the date that his bond was discharged, such as during grand jury proceedings. Additionally, his claims that the defendants attempted

to coerce guilty pleas appear to be based on Hall's allegations that the defendants initiated charges against him and that Trimble reported Hall's arrest to Dayton Law School and directed a prisoner to harm him. [*Id*. at ¶ 50, 148] These actions also occurred well before Hall's bond was discharged. Hall thus knew or should have known of the injury allegedly caused by Trimble, Steele, and Baxter by September 10, 2015, at the latest. Because Hall failed to file these claims within a year of that date, they are time-barred.

Hall's claim for abuse of process against Trimble, Steele, and Baxter is also barred by the statute of limitations. Although the Sixth Circuit does not appear to have addressed the date on which an abuse of process claim accrues, Kentucky courts hold in accordance with the "virtually universal" rule that "the cause of action for an abuse of process accrues at the time the conduct complained of by the plaintiff occurred, not at the termination of the underlying litigation." *DeMoisey v. Ostermiller*, No. 2014-CA-001827-MR, 2016 WL 2609321, at *14 (Ky. Ct. App. May 6, 2016). As stated above, the Complaint does not name any misconduct by any of these three defendants that occurred within the year before Hall filed his claims. Although Hall does not specify the conduct that provides the basis for his abuse of process claim, the claim is necessarily based on conduct that occurred more than a year before he filed his Complaint. Hall either knew or should have known of his abuse of process claim at the time that the alleged misconduct occurred and this claim is barred by the statute of limitations.

To the extent that Hall would argue that his claims against Trimble, Steele, and Baxter are timely because they are based on an injury that continued until the charges against him were dismissed in 2016, his argument fails because the continuing violations doctrine does not apply. This doctrine is a narrow exception to the general rule that a cause of action accrues at the time that the plaintiff has reason to know of his injury that is "rarely extend[ed] to § 1983

actions." *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003) (citation omitted). "[A] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Eidson v. State of Tennessee Dept. of Children's Services*, 510 F.3d 631, 635 (6th Cir. 2007) (citation omitted). Because the only allegedly unlawful actions by Trimble, Steele, and Baxter occurred more than one year before Hall filed his Complaint, Hall has failed to allege the continual unlawful acts that are necessary for the continuing violation doctrine to apply.

Hall claims a civil conspiracy against all defendants for depriving him of various constitutional rights. Because the allegations relating to this claim are vague and his injury is difficult to discern, the Court will assume that the claim is not barred by the statute of limitations.

## 2. State Law Claims

The defendants also argue that some or all of Hall's state law claims are barred by the applicable statute of limitations. Federal courts evaluating state law claims apply the forum state's law regarding statute of limitations. *See Curtis v. State Farm Fire and Cas. Co.*, 617 F. App'x 517, 518 (6th Cir. 2015) (citations omitted). Under Kentucky law, a claim for infliction of emotional distress is subject to a five-year statute of limitations. *Craft v. Rice*, 671 S.W.2d 247, 251 (Ky. 1984).[4] Hall's remaining state claims are subject to a one-year statute of limitations. KRS 413.140. In Kentucky, a cause of action generally accrues on the

---

[4]     While Kentucky courts have clearly established that the five-year statute of limitations applies to a claim for intentional infliction of emotional distress, they do not appear to have established which statute of limitations applies to claims for negligent infliction of emotional distress. The Court will assume that the longer statute of limitations period applies to negligent claims as well, absent clear guidance to the contrary.

date that the fact of the plaintiff's injury "became objectively ascertainable." *Wiseman v. Alliant Hospitals, Inc.*, 37 S.W.3d 709, 713 (Ky. 2000).

Some of Hall's state law claims are timely filed. Hall's claims for intentional and negligent infliction of emotional distress are not time-barred because he filed them within five years of the date that his alleged injuries occurred. Likewise, Hall's malicious prosecution claims are not barred by the statute of limitations. The statute of limitations for Kentucky malicious prosecution claims does not begin to run until the prosecution has resolved in the litigants favor. *See Dunn v. Felty*, 226 S.W.3d 68, 73 (Ky. 2007). The same analysis thus applies to Hall's state malicious prosecution claims as applied to his federal claims, and they are not time-barred.[5]

Hall also claims that each defendant was negligent in investigating and prosecuting the charges against him. He alleges that the defendants' negligence in evaluating and using the evidence involved in his case resulted in his "arrest and imprisonment . . . without probable cause or other legal justification . . . ." [*Id*. at ¶ 219] Hall thus claims that the injury on which his negligence claim is based was his arrest and imprisonment. Hall's negligence claims accrued on the date that his injury, arrest and imprisonment, was objectively ascertainable. The Complaint contains assertions that the court released Hall from home incarceration and removed all bond conditions on September 10, 2015. [*Id*. at ¶ 138] Hall necessarily was initially arrested and incarcerated on all charges at some point before this date and his

---

[5] As previously discussed, Hall cannot maintain a claim for malicious prosecution on the insurance fraud claim or intimidation claim because the applicable statute of limitations period has expired.

negligence claims must have accrued on some date before September 10, 2015. [6]   Because Hall did not file his claims within one year of that date, his negligence claim is barred by the statute of limitations.

Hall's claim for defamation is also barred by the statute of limitations.  The Complaint's only allegations relating to false information reported by the media were in connection with the "murder" charge and the intimidation/retaliation charges.  [*Id*. at ¶¶ 28, 73]  According to the Complaint, the media reported the "murder" charge in May 2013 and reported Defendant Trimble's statements relating to the retaliation charge in approximately June 2014.  [*Id*. at ¶¶ 73, 74]  His defamation claim thus accrued well before December 2015.

Hall also raises a false imprisonment claim against all defendants that is barred by the statute of limitations.  The statute of limitations period for false arrest and false imprisonment claims "begins to run at the time the plaintiff becomes detained pursuant to legal process." *Dunn v. Felty*, 226 S.W.3d 68, 74 (Ky. 2007).  Hall was held pursuant to legal process on the various charges beginning at the following times:  arraignment on the solicitation charge in May 2013; arraignment on the hindering charge in June 2014; indictment on the intimidation charge in March 2015; and arrest on a warrant for harassing communications in approximately January 2015.[7]  [Record No. 31, ¶¶ 29, 83, 93, 118-20]  Hall failed to file his Complaint within a year of any of these dates.

---

[6]     To the extent that Hall's injury is based on the alleged improper use of evidence following the date of his arrest, all allegations relating to the use of evidence occurred before September 10, 2015.  His injury was objectively ascertainable prior to this date and his claim is time-barred.

[7]     The Complaint does not identify the exact date of the arrest, but indicates that law enforcement obtained a warrant and arrested him in late January or shortly thereafter.  Because Hall does not challenge the validity of the arrest warrant, he was held pursuant to the legal

Hall also claims abuse of process against all defendants under state law.  For the reasons stated with respect to Hall's federal claim, the abuse of process claim against Hammons is timely and the abuse of process claim against Trimble, Steele, and Baxter is barred by the statute of limitations.

The basis for Hall's respondeat superior claim is not clear from the Complaint.  The Court will assume that this claim is timely filed because the Complaint does not affirmatively establish that the claim accrued more than a year before Hall filed his Complaint.

## B.  Prosecutorial Immunity

The following federal claims against the prosecutor defendants are timely and remain pending:  malicious prosecution, violation of the right to a speedy trial, civil rights conspiracy, deprivation of liberty against Hammons, behavior that shocks the conscience against Hammons, and abuse of process against Hammons.  Hall's timely state claims include: intentional infliction of emotional distress, negligent infliction of emotional distress, malicious prosecution, respondeat superior, and abuse of process against Hammons.  The prosecutor defendants each argue that they are entitled to absolute immunity on Hall's claims.  Specifically, they allege that each of Hall's claims of alleged wrongdoing is based on actions within the scope of their role as advocates for the state.  Hall replies that many of his claims are based on non-prosecutorial actions for which the prosecutors are not entitled to absolute immunity.

---

process as of the date of his arrest pursuant to the warrant.  *See Smith v. Stokes*, 54 S.W.3d 565, 567 (Ky. Ct. App. 2001) (citation omitted) (stating that an action for false arrest or false imprisonment concludes once the plaintiff is arrested pursuant to a valid warrant because, at this time, the plaintiff is being held pursuant to legal authority).

## 1. Federal Claims

"[A] prosecutor enjoys absolute immunity from § 1983 suits for damages when he acts within the scope of his prosecutorial duties." *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976). Absolute immunity shields a prosecutor from suit for conduct in "initiating a prosecution and in presenting the State's case" where the conduct is "intimately associated with the judicial phase of the criminal process." *Id*. at 430, 431. Conversely, a prosecutor is not entitled to absolute immunity where the prosecutor's conduct is more appropriately classified as administrative or investigative. *Id*. When determining whether conduct is entitled to absolute immunity, "the critical inquiry is how closely related is the prosecutor's challenged activity to his role as an advocate ultimately associated with the judicial phase of the criminal process." *Joseph v. Patterson*, 795 F.2d 549, 554 (6th Cir. 1986).

The prosecutors were acting in their capacities as advocates on the state's behalf such that they are entitled to absolute immunity for the majority of the conduct alleged in the Complaint. The prosecutors are absolutely immune on any claim that they evaluated the evidence improperly and incorrectly initiated and maintained prosecutions against him because these are clearly prosecutorial functions. *Imbler*, 424 U.S. at 431. Additionally, Hall cannot maintain a claim against them for their alleged failure to conduct an adequate investigation because a prosecutor is protected by absolute immunity "for being involved in investigation of evidence brought before a grand jury or a trial jury . . . ." *Grant v Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989).[8]

---

[8] There is an exception to this general rule where the prosecutor investigates the plaintiff's case *before* there has been a neutral probable cause determination, in an attempt to establish probable cause, because conducting an investigation to establish probable cause is the task of law enforcement, not the prosecutor. *See Buckley*, 509 U.S. at 274. This exception

The prosecutors are entitled to absolute immunity for most of their alleged conduct in developing evidence against Hall. The prosecutors cannot be subject to suit for their alleged conduct in directing law enforcement to testify falsely during court proceedings because "[p]reparation of witnesses for trial is protected by absolute immunity" and allegedly "presenting fabricated evidence to the grand jury and trial jury are actions protected by absolute immunity . . . ." *Spurlock v. Thomas*, 330 F.3d 791, 797-78 (6th Cir. 2003). Likewise, they are entitled to absolute immunity for their conduct relating to a search and seizure because they were "clearly preparing for the initiation of judicial proceedings . . . ." *Lomaz v. Hennosy*, 151 F.3d 493, 499 (6th Cir. 1998). Further, "the non-disclosure of exculpatory information [is] certainly entitled to absolute immunity." *Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir. 1986).

The prosecutors' alleged conduct relating to the court setting a trial date or bond conditions is also entitled to absolute immunity. Prosecutors are absolutely immune on claims of a speedy trial violation because "speedy trial rights pertain to an integral part of the litigation . . . ." *Maples v. County of Macomb*, No. 06-14775, 2007 WL 2421521, at *3 (E.D. Mich. August 13, 2007); *see also Jackson v. Villanueva*, No. 1:13 CV 970, 2013 WL 4758036, at *3 (N.D. Ohio September 4, 2013). The prosecutors are also absolutely immune regarding any claim based on the imposition of bond conditions because they clearly acted as advocates for the state in requesting bond conditions. *Ghaith v. Raushenberger*, 493 F. App'x 731, 739, n. 4 (6th Cir. 2012). This conclusion is not altered by the allegation that a prosecutor made the

does apply based on an action allegedly taken by Hammons, as discussed below. However, aside from this conduct, the Complaint contains no allegations that any of the prosecutors engaged in investigatory conduct prior to the judge's issuance of an arrest warrant based on a probable cause finding, so this exception does not apply.

request *ex parte* because Hall has cited to no law indicating that an action is any less prosecutorial in function for the sole reason that it was taken *ex parte*. *See Adams v. Hanson*, 656 F.3d 397, 403 (6th Cir. 2011) (noting that an action was taken *ex parte* and off the record but concluding that the prosecutor had acted as an advocate of the state without mentioning the fact that the action was *ex parte* in its analysis).

Prosecutors are generally entitled to absolute immunity for their conduct in negotiating plea bargains. The plea negotiation process is "so intimately associated with the prosecutor's role as an advocate of the State in the judicial process as to warrant absolute immunity." *Cady v. Arenac County*, 574 F.3d 334, 341 (6th Cir. 2009). An exception to absolute immunity applies where the prosecutor takes an action so egregious that the action is "clearly beyond his authority." *Rouse v. Stacy*, 478 F. App'x 945, 951 (6th Cir. 2012) (finding that the prosecutor was not entitled to absolute immunity for his conduct in ordering a prison guard to beat the plaintiff in an attempt to secure a guilty plea).

Here, the prosecutors are entitled to absolute immunity on any claim that they initiated charges against him in an attempt to secure a guilty plea. Because prosecutors have the authority to initiate charges, they did not take an action that is clearly beyond their authority. *Imbler*, 424 U.S. at 431. Accordingly, the general rule that prosecutors are entitled to absolute immunity for their conduct during plea negotiations applies rather than the exception established in *Rouse*.[9]

---

[9] Trimble is not entitled to absolute immunity for Hall's allegation that Trimble directed a fellow prisoner to harm him, which Hall argues in his response was done to coerce a guilty plea. However, any claim based on this conduct is time-barred, as discussed previously. Likewise, any claim based on the allegation that Trimble reported Hall's arrest to Dayton Law School in an attempt to secure a guilty plea is time-barred because this event occurred in 2014. [*Id*. at ¶ 57]

Trimble is entitled to absolute immunity on Hall's claim that Trimble maliciously prosecuted him by directing Baxter to obtain an arrest warrant. Hall characterizes this action as giving legal advice, an action that is not protected by absolute immunity under *Burns v. Reed*, 500 U.S. 478 (1991). However, the United States Court of Appeals for the Sixth Circuit has declined to establish "a blanket rule that commanding the arrest of a suspect is per se outside the scope of a prosecutor's role as an advocate . . . ." *Howell v. Sanders*, 668 F.3d 344, 351 (6th Cir. 2012). Instead, the inquiry is based on whether the action of instructing law enforcement to obtain a warrant was taken in an investigatory or prosecutorial capacity. Where the prosecutor's decision to direct law enforcement to obtain a warrant functioned as a decision to initiate charges, this is clearly an advocacy function that is entitled to absolute immunity. *See id.* at 352 ("A prosecutor's decision to file a criminal complaint and seek an arrest warrant . . . fall[s] squarely within the aegis of absolute prosecutorial immunity.") (citing *Ireland v. Tunis*, 113 F.3d 1435, 1446 (6th Cir. 1997)).

The Complaint contains no allegations that Trimble gave Baxter legal advice regarding his investigation of the case. Instead, the Complaint alleges that Baxter conducted an independent investigation and that Trimble instructed him to obtain an arrest warrant following that investigation. [Record No. 31, ¶ 25] These allegations provide no basis to conclude that Trimble acted in an investigatory capacity or gave Baxter "legal advice" in any meaningful sense. Instead, the Complaint's allegations indicate that Trimble's instruction to obtain an arrest warrant was the functional equivalent of him initiating a prosecution against Hall—an action that is clearly protected by absolute immunity. Accordingly, *Burns* does not apply in

this case and Trimble is entitled to absolute immunity for his decision to initiate the solicitation prosecution.[10]

Hammons is not entitled to absolute immunity on claims based on his alleged fabrication of an email from Hall. In *Buckley*, the Court concluded that the prosecutors were not functioning as advocates when they fabricated evidence relating to a boot print found at the scene of the crime. *Buckley*, 509 U.S. at 274. It reached this conclusion because the fabricated evidence was used to establish probable cause, which is more analogous to "the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested" than to the advocate's role of evaluating evidence and presenting a case. *Id.* at 273. Construing the Complaint's allegations liberally, Hammons fabricated the email from Hall in an investigatory capacity to establish a bond violation and/or contempt of court and secure a guilty plea. Hammons is not entitled to absolute immunity for this alleged action.

Hall argues that the prosecutors cannot be absolutely immune for claims based on charges to which Hall was never indicted because absolute immunity does not apply to pre-indictment conduct. But the Supreme Court has directly addressed and rejected this argument. In *Buckley*, the petitioner argued that the protection of absolute immunity "extends only to the act of initiation itself and to conduct occurring in the courtroom." *Buckley*, 509 U.S. at 272. The Court declined to adopt this "extreme position" because "the duties of the prosecutor in

---

[10]    Hall also alleges that Trimble is not entitled to absolute immunity for his actions in connection with the intimidation charge because he acted as a "witness" on that charge. However, any claim based on this charge is time-barred, as stated in the previous section. Moreover, Hall has not alleged that Trimble engaged in any actionable conduct as a "witness" in connection with this charge.

his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom, and are nonetheless entitled to absolute immunity." *Id*. (internal quotation marks and citation omitted). For example, prosecutors are entitled to absolute immunity for presenting evidence at a probable cause hearing, presenting evidence before the grand jury, and preparing and filing documents to obtain an arrest warrant, each of which occurs prior to indictment. *Adams v. Hanson*, 656 F.3d 397, 402 (6th Cir. 2011). Because the absolute immunity inquiry is based on nature of the function performed, the arbitrary rule that Hall suggests is not appropriate.[11]

Based on the above analysis, Hall cannot maintain his timely claims against Trimble or Steele because these claims relate to the prosecutors' conduct in initiating a prosecution and developing the evidence in preparation for court proceedings.[12] The only claim remaining against these defendants is the civil conspiracy claim, to the extent that it alleges a conspiracy based on Hammons's alleged fabricated email because this action is not protected by absolute immunity. Likewise, Hall's claims against Hammons based on the email, which include the deprivation of liberty, civil conspiracy, behavior that shocks the conscience, and abuse of process claims, remain.

---

[11]     Hall is correct that the Sixth Circuit has stated that "where the role as advocate has not yet begun, namely prior to indictment, . . . absolute immunity does not apply." *Spurlock v. Thompson*, 330 F.3d 791, 799 (6th Cir. 2003). However, this statement was made in dicta and is also at odds with more recent Sixth Circuit decisions affording absolute immunity to actions taken before the defendant had been indicted.

[12]     The prosecutors are not entitled to absolute immunity for any statements made to the press. *Spurlock*, 330 F.3d at 798. However, any claim based on this conduct would be time-barred because the allegedly false statements occurred over a year before he filed his Complaint.

## 2. State Law Claims

Like federal courts, state courts in Kentucky employ a functional analysis and draw a distinction between a prosecutor's actions taken in an investigatory capacity, seeking to establish probable cause to arrest, and actions taken as an advocate on the state's behalf in prosecuting the defendant. In *McCollum v. Garrett*, 880 S.W.2d 530, 534 (Ky. 1994), the court discussed *Buckley*, *Burns*, and *Imbler* and held that a prosecutor is not entitled to absolute immunity when he "functions as an administrator or investigator," but that absolute immunity applies when the prosecutor "is acting within the scope of his authority," regardless of whether the actions "were necessarily preliminary to the initiation of a prosecution."

Because Kentucky law appears to be based on and mirrors federal law, the absolute immunity analysis conducted above on Hall's federal claims also applies to Hall's state claims. Steele was acting as an advocate on behalf of the state with respect to all of Hall's allegations against him, including his decision to initiate a prosecution, evaluate and develop the evidence against Hall in connection with the prosecution, and negotiate a plea agreement. None of the Complaint's allegations of Steele's misconduct qualify as actions taken in an investigative or administrative capacity. Accordingly, Steele is absolutely immune from suit regarding all of Hall's state law claims.

As discussed above, the majority of Hall's allegations against Trimble are based on actions taken as an advocate on the state's behalf. However, Hall does allege that Trimble ordered a fellow prisoner to harm him. Assuming the truth of this allegation, this action was

clearly not taken within the scope of Trimble's authority as an advocate on behalf of the state and Trimble is not entitled to absolute immunity on this action.[13]

Hall's malicious prosecution and negligent infliction of emotional distress claims against Trimble are based on conduct for which Trimble is entitled to absolute immunity. The injury alleged in Hall's state malicious prosecution claim appears to be identical to the injury alleged in his federal malicious prosecution claim. Hall asserts that Trimble injured him by initiating a prosecution without probable cause, failing to properly evaluate the evidence, failing to conduct an adequate investigation, fabricating evidence, and failing to disclose exculpatory evidence. His negligence infliction of emotional distress claim is based on the same conduct. However, this conduct occurred during the judicial phase of the proceeding and in Trimble's capacity as an advocate on the state's behalf for the reasons stated within the discussion of absolute immunity under federal law. Accordingly, Trimble is entitled to absolute immunity on these claims.

Trimble is not entitled to absolute immunity on Hall's intentional infliction of emotional distress claim. Absolute immunity applies to the extent that the claim is based on Trimble's initiation of charges and subsequent handling of evidence in developing a case against Hall. However, the intentional infliction of emotional distress claim is also based on Trimble's alleged conduct in ordering a prisoner to harm Hall. Trimble is not protected by absolute immunity to the extent that Hall alleges intentional infliction of emotional distress based on this incident.

_____

[13] Trimble is not entitled to immunity for his statements made to the press, but Hall's claim on this basis is time-barred. Likewise, Trimble may not have been acting as an advocate when he allegedly reported Hall's arrest to Dayton Law School, but this claim also is time-barred and Hall has failed to explain how this conduct is actionable.

For the reasons stated regarding Trimble and Steele, Hall's negligent infliction of emotional distress claim against Hammons is based solely on conduct for which he is absolute immune. However, Hall's state law claims against Hammons for intentional infliction of emotional distress and abuse of process appear to each encompass Hammons's alleged conduct of fabricating an email. Because Hammons is not entitled to absolute immunity for this conduct, absolute immunity does not apply for either of these claims.

### C. Failure to State a Claim

To state a claim under § 1983, the plaintiff must allege that a person acting under color of state law deprived him of a right secured by the Constitution or the laws of the United States. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978). Each of Hall's federal claims are causes of action under § 1983 and concern actions taken under color of state law. However, those remaining claims that are not barred by the limitations period or immunity will be dismissed because Hall has failed to allege sufficient factual matter to state a plausible claim to relief. Likewise, Hall has failed to state a claim for the state claims.

#### 1. Claims Against Baxter

Hall's only remaining federal claim against Baxter individually is his claim for malicious prosecution. His timely state claims include: intentional infliction of emotional distress, negligent infliction of emotional distress, and malicious prosecution.[14] Baxter argues that the claims against him should be dismissed because he is entitled to immunity or, alternatively, Hall has failed to state a claim upon which relief can be granted.

---

[14] The merits of the federal civil conspiracy claim and state respondeat superior claim will be addressed separately.

*i. Malicious Prosecution*

Baxter argues that he is absolutely immune from liability on Hall's malicious prosecution claim because the claim is based on Baxter's testimony before the grand jury. "[A] grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony." *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012). Hall thus cannot rely on Baxter's grand jury testimony to state a claim for malicious prosecution. *See Sanders v. Jones*, 845 F.3d 721, 733 (6th Cir. 2017). However, "the court should determine whether the plaintiff can make out the elements of his § 1983 claim without resorting to the grand jury testimony." *Id*. at 734 (citation omitted). Thus, the issue is whether Hall can state a claim for malicious prosecution without relying on the grand jury testimony that is protected by absolute immunity.

To state a claim for malicious prosecution in federal court, the plaintiff must allege: (1) that a criminal prosecution was initiated and the defendants made, influenced, or participated in the decision to prosecute; (2) that there was a lack of probable cause to prosecute; (3) that the plaintiff suffered a deprivation of liberty; and (4) that the criminal proceeding was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (citations omitted). A malicious prosecution claim in state court requires the plaintiff to allege these elements and also allege that the defendant acted with malice. *Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016).

Hall cannot maintain his malicious prosecution claim against Baxter because the criminal proceeding was supported by probable cause. Without considering Baxter's testimony in court proceedings (for which he is absolute immune) or his allegedly false police report, the information in support of the charge included an anonymous individual's post on an internet forum offering payment in exchange for the murder of another person and the

service provider's statement that Hall was the subscriber of the IP address from which the post originated. [Record No. 31, ¶¶ 17, 21] This information alone was sufficient to establish probable cause.

Probable cause is "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Commonwealth v. Jones*, 217 S.W.3d 190, 200 (Ky. 2006) (citation omitted). "Probable cause is a fluid concept" that "deals with probabilities and depends on the totality of the circumstances." *Williams v. Commonwealth*, 147 S.W.3d 1, 7 (Ky. 2004) (quoting *Maryland v. Pringle*, 540 U.S. 366 (2003)). The probable cause standard is satisfied if there is "reasonable ground for belief of guilt." *Id.*

Hall was prosecuted for "command[ing] or encourag[ing] another person to engage in specific conduct which constitute" the crime of murder "with the intent of promoting or facilitating the commission of a crime . . . ." KRS 506.030. A Kentucky court affirmed a defendant's conviction for solicitation to commit murder where "ample evidence was adduced by the [C]ommonwealth that appellant intentionally encouraged and solicited both a police informant and an undercover police officer to murder [an individual] in return for . . . payment of a fixed sum of money." *Landrith v. Commonwealth*, 709 S.W.2d 833, 834 (Ky. Ct. App. 1986). Here, the anonymous post encouraging the murder of an individual and promising payment in return qualified as solicitation of murder within the meaning of the statute.[15]

---

[15] Hall argues that there was no probable cause to arrest him because law enforcement had not identified a solicitee. However, he cites no law in support of this requirement and the Court was unable to locate any basis in Kentucky law for concluding that a person cannot be convicted of this crime if the solicitation is general rather than directed toward a particular person.

Additionally, the fact that the solicitation post had originated from Hall's IP address established probable cause to believe that he was responsible for the post soliciting an individual's murder. Hall's suggestion that an IP address is insufficient to establish probable cause is inaccurate. In *United States v. Sloan*, 307 F. App'x 88, 90 (9th Cir. 2009), the defendant argued that the government lacked probable cause to arrest him because it relied exclusively on the fact that the IP address that he subscribed to was associated with illegal conduct. The court rejected the argument, stating that "where an administrative subpoena revealed that an IP address registered to [the defendant] was associated with files confirmed to contain child pornography, a prudent officer would have concluded that there was a fair probability that [the defendant] possessed those files in violation" of federal law. *Id*.; *see also United States v. Gilman*, 432 F. App'x 513, 515 (6th Cir. 2011) (stating that an IP address associated with illegal activity registered to the defendant's address was sufficient to establish probable cause to support a search warrant for that address). Accordingly, evidence that the defendants is the subscriber to the IP address is sufficient to establish probable cause that a defendant is responsible for illegal activity associated with that IP address.

Because there was probable cause to support the criminal prosecution for solicitation of murder based solely on the IP address to which Hall subscribed, Hall has failed to allege the requisite elements of a malicious prosecution claim under federal and state law. Hall has failed to state a claim upon which relief can be granted for either of these claims.

### ii. Intentional Infliction of Emotional Distress

Hall's intentional infliction of emotional distress claim against Baxter is based on allegations that Baxter maliciously prosecuted him, caused him to be falsely imprisoned, and took various improper actions over the course of the prosecution. Under Kentucky law, a

plaintiff claiming intentional infliction of emotional distress must allege facts that establish: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable such that it offends generally accepted standards of decency and morality; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress was severe. *Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky. 1999). The first element is only satisfied if the plaintiff alleges that the "actor had the specific purpose of causing emotional distress (intentional) or intended a specific conduct and knew or should have known that it would cause *emotional distress rather than a personal (physical) injury* (recklessness)." *Childers v. Geile*, 367 S.W.3d 576, 580 (Ky. 2012) (citation omitted) (emphasis in original).

Baxter's alleged conduct will not give rise to a claim for intentional infliction of emotional distress. Baxter investigated a post that solicited an individual's murder and concluded that Hall was likely the individual who created the post because the post came from his IP address. This information gave Baxter probable cause to arrest Hall. Regardless of the fact that the charge was ultimately dismissed, Baxter behaved entirely reasonably in arresting Hall and participating in the grand jury proceeding. Accordingly, there is nothing about Baxter's conduct that could appropriately be characterized as outrageous or intolerable. Likewise, there is no indication that Baxter engaged in this conduct intending to cause severe emotional distress or that he should have known that this conduct would cause severe emotional distress. Hall has failed to state a claim for intentional infliction of emotional distress.

*iii. Negligent Infliction of Emotional Distress*

Hall reiterates the same actions alleged regarding the intentional infliction of emotional distress claim in support of his negligent infliction of emotional distress claim. A plaintiff claiming negligent infliction of emotional distress must allege: "(1) the defendant owed a duty of care to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." *Osborne v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012). Hall's claim consists entirely of conclusory allegations that the defendants caused his injury by "negligence and/or gross negligence." [Record No. 31, ¶ 213]

The Complaint's allegations provide no basis to conclude that Baxter breached a duty of care owed to Hall. Instead, as stated above, Baxter reasonably concluded that there was probable cause to believe that Hall had solicited Melissa Jones's murder and proceeded with a criminal proceeding on the basis of this reasonable conclusion. Hall has failed to allege any facts that would support his conclusory allegation that Baxter acted negligently at any point during this proceeding. Hall's claim for negligent infliction of emotional distress fails.

## 2. Claim Against Trimble

Hall's claim for intentional infliction of emotional distress is based on Trimble's alleged conduct in directing a prisoner to harm Hall.[16] The Supreme Court of Kentucky has stated that "[t]he purpose behind recognizing the tort of intentional infliction of emotional distress was to allow a cause of action for severe emotional distress, caused by truly outrageous

---

[16] Hall's factual inference that Trimble ordered a prisoner to harm him is based on the fact that Trimble later prosecuted that prisoner's case and requested that the prisoner receive a favorable plea bargain. [Record No. 31, ¶ 151] Hall does not allege sufficient factual matter to make this improbable inference plausible. However, the Court will assume the inference is true because, even if true, Hall fails to state a claim.

behavior, where there was no remedy because the victim did not have an injury directly to his person or intangible personal attributes such as reputation." *Childers*, 367 S.W.3d at 581. The tort of intentional infliction of emotional distress is thus a "gap-filler" tort that is only available where the injury at issue cannot be addressed by more traditional torts. *Id.*

In *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295 (Ky. Ct. App. 1993)[17] the plaintiff claimed battery, intentional infliction of emotional distress, and negligence based on the defendant's forced sexual conduct on a minor. The court stated that it had "no problem" concluding that the defendant's conduct "could be found to be extreme and outrageous." *Id.* at 298. However, "where an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery of emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie." *Id.* at 299. The court concluded that the plaintiff could not recover on the intentional infliction of emotional distress claim because:

> There is no evidence from which it could be inferred that the [defendant] intended only to invade [the plaintiff's] interest in freedom from emotional distress. His intent plainly was his own sexual gratification accomplished by means of assault and battery by which he invaded [the plaintiff's] legally protected interests in being free from the apprehension of harmful or offensive bodily contact and in being free from such contact itself.

*Id.*

Here, the tort of outrage is unavailable because Trimble's alleged conduct amounted to battery and the Complaint contains no allegations that would suggest that Trimble's conduct was intended only to cause Hall severe emotional distress. Kentucky law defines civil battery

---

[17]  The Supreme Court of Kentucky described *Rigazio* as "a seminal case." *Childers*, 367 S.W.3d at 581.

as "any unlawful touching of the person of another, either by the aggressor himself, or by any substance set in motion by him." *Vitale v. Henchey*, 24 S.W.3d 651, 657 (Ky. 2000) (internal quotation marks and citation omitted). Trimble's alleged conduct of directing another person to physically harm Hall clearly qualifies as battery under this definition. Additionally, the Complaint contains no allegations that would suggest that Trimble engaged in the conduct for the purpose of causing Hall to experience severe emotional distress, much less that this was his only intention. To the contrary, the Complaint alleges Trimble ordered the physical harm "in furtherance of his scheme and malicious efforts to keep Hall in jail for crimes he knew Hall did not commit . . . ." [Record No. 31, ¶ 147] Based on Hall's own allegations, Trimble did not act intending to cause him emotional distress and Hall has failed to state a claim for intentional infliction of emotional distress under Kentucky law.

### 3. Claims Against Hammons

Hall's remaining federal claims against Hammons include malicious prosecution, deprivation of liberty, behavior that shocks the conscience, and abuse of process. The remaining state claims include intentional infliction of emotional distress, malicious prosecution, and abuse of process. Each of these claims may be permissibly based only on the alleged conduct for which Hammons is not protected by absolute liability: fabricating an email on which the imposition of bond conditions and a contempt charge was based.

Hall alleges that "someone posing as Hall sent an email to prosecutor Hammons . . . ." [Record No. 31, ¶ 104] Hammons moved for an order seeking to revoke Hall's bond and to hold Hall in contempt for violating recently-established bond conditions that prohibited Hall from contacting Hammons based on this email. [*Id*. at ¶ 105] Hall's allegation of Hammons's involvement is as follows:

> Hall believes and avers that the new bond conditions and the subsequent email were a set up by prosecutor Hammons, Bird, Reeves, or others working in conspiracy to manufacture an additional basis to either keep him incarcerated or force him into a plea deal or otherwise stipulate to probable cause on the Hindering Charge.

[*Id*. at ¶ 109]

Hall has failed to state any claim on the basis of these factual allegations because he has not alleged any facts in support of his inference that Hammons fabricated the email. Under *Twombly* and *Iqbal* pleading standards, the "sufficiency of a complaint turns on its factual content, requiring the plaintiff to plead enough factual matter to raise a plausible inference of wrongdoing." *16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). This requirement is in place to "prevent[] plaintiffs from launching a case into discovery—and from brandishing the threat of discovery during settlement negotiations—when there is no reasonable likelihood that they can construct a claim from the events related in the complaint." *Id.* (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 558).

The factual matter alleged in the Complaint does not support an inference that Hammons fabricated an email and represented to the court that Hall had sent it. The Court will accept as true Hall's factual allegation that he did not personally send the email and that the email was sent by someone posing as him. However, the Court "need not . . . accept as true . . . unwarranted factual inferences." *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). Hall offers no factual matter in support of his "belie[f]" that Hammons, perhaps in concert with others, was responsible for the email. This "naked assertion[] devoid of further factual enhancement contribute[s] nothing to the sufficiency of the complaint." *Flagstar Bank*, 727 F.3d at 506 (internal quotation marks and citation omitted). Hall's conclusory allegation that Hammons "set up" the email is an implausible and unwarranted inference for which there is

no basis in fact.  The Court will decline to adopt Hall's implausible conclusion that Hammons fabricated an email and will dismiss all claims based on this conduct for failure to state a claim.

### 4.  The Civil Conspiracy Claim

Hall alleges that the defendants, through the entirety of their conduct as alleged in the Complaint, "agreed and conspired among themselves" to deprive Hall of the constitutional rights stated within his deprivation of liberty claim.  Several of the defendants argue that this claim must be dismissed because Hall has failed to allege sufficient factual matter to state a claim for civil conspiracy.  In response, Hall refers the Court to the entirety of his Complaint and states:  "If there was no conspiracy between the Defendants how then could it be possible for Hall to have endure over three years of the conduct plead in totality above . . . ."  [Record No. 55]

Hall's allegations lack any factual matter suggesting that the defendants conspired to deprive him of his constitutional rights.  "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action."  *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003).  The plaintiff must allege that "there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant."  *Id.*  Further, "it is well settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim under § 1983."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

The Complaint contains a number of allegations that the defendants each took various actions that violated Hall's constitutional rights.  But even assuming that the defendants did engage in unconstitutional conduct, there are no factual allegations "from which to infer that

the defendants acted in concert in so doing." *Spadafore*, 330 F.3d at 854. The Complaint lacks any factual allegations indicating that the "defendants had a single plan" when they engaged in the allegedly unconstitutional conduct. *Id.* There is no factual support for Hall's belief that the defendants jointly targeted him and developed a plan to deprive him of his liberty by initiating baseless charges. Instead, the Complaint's allegations suggest the far more likely explanation that there was probable cause to arrest Hall on the solicitation charge and that the subsequent charges were also based on the law enforcement officers' and prosecutors' independent determination of probable cause to believe that he had taken the actions for which he was charged. *See Flagstar Bank*, 727 F.3d at 505 ("the existence of obvious alternative explanations simply illustrates the unreasonableness of the inference sought and the implausibility of the claims made."). The Court, therefore, declines to reach Hall's unwarranted and implausible conclusion that the defendants acted in accordance with a single plan to deprive him of his constitutional rights. Hall has failed to allege sufficient factual matter to state a plausible claim of civil conspiracy.

### 5. The Respondeat Superior Claim

Hall's final claim is for "respondeat superior" under state law, against all defendants. It is not immediately clear how a litigant can maintain a claim for "respondeat superior" since this is a theory of liability that is used to establish a claim rather than a claim in itself. "Under the doctrine of respondeat superior, an employer can be held vicariously liable for an employee's tortious actions if committed in the scope of his or her employment." *Papa John's Intern., Inc. v. McCoy*, 244 S.W.3d 44, 56 (Ky. 2008). In any event, respondeat superior is not applicable because the Complaint contains no allegations relating to an employer-employee

relationship regarding any of these defendants. Accordingly, to the extent that respondeat superior can be stated as a claim, Hall has failed to state a claim and the claim will be dismissed.

## IV.

For the foregoing reasons, it is hereby

**ORDERED** as follows:

1.     The Plaintiff's motion for discovery [Record No. 61] is **DENIED**.

2.     Defendant Baxter's motion to dismiss [Record No. 34] is **GRANTED** and the claims against him are **DISMISSED**.

3.     Defendant Trimble's motion to dismiss [Record No. 36] is **GRANTED** and the claims against him are **DISMISSED**.

4.     Defendant Steele's motion to dismiss [Record No. 38] is **GRANTED** and the claims against him are **DISMISSED**.

5.     Defendant Hammons's motions to dismiss [Record No. 39] is **GRANTED** and the claims against him are **DISMISSED**.

This 24th day of May, 2017.



Signed By:

_Danny C. Reeves_   DCR

United States District Judge