UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| TRISTAN JAMES HALL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:  16-304-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CITY OF WILLIAMSBURG, | ) | **MEMORANDUM OPINON** |
| KENTUCKY, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is pending for consideration of the motion to dismiss or, alternatively, for judgment on the pleadings filed by the remaining defendants in this case, the City of Williamsburg, Kentucky ("City of Williamsburg") and Chief Wayne Bird ("Bird").  [Record No. 111]  The defendants argue that they are entitled to judgment on the pleadings based on the statute of limitations, immunity, and failure to state a claim upon which relief can be granted.  The defendants' motion will be granted, in part, and denied, in part, for the reasons outlined below.

## I.

The relevant facts of this case have been set out in the Court's decision granting motions to dismiss filed by the other defendants.  [Record No. 110]  As explained previously, this case involves ongoing criminal proceedings in which Hall was charged with several offenses.  The Amended Complaint alleges the following facts that are relevant to the remaining defendants.

### A.     The Solicitation Charge

In January 2013, an anonymous person used the internet forum Topix to post that he or she would "pay someone $5000 cash for the murder and concealment of Melissa Jones [sic] body . . . ." [Record No. 31, ¶ 17] Following an investigation, law enforcement officer Richard Baxter ("Baxter") concluded that Hall had created the post. [*Id*. at ¶ 21] According to the Amendment Complaint, Baxter then obtained a warrant and arrested Hall for the offense of "murder".[1] [*Id*. at ¶ 27] The court arraigned Hall for this offense on May 17, 2013. [*Id*. at ¶ 29] The murder charge was later amended to solicitation to commit murder and the grand jury indicted Hall for this offense on June 17, 2013. [*Id*. at ¶ 31]

**B.    The Intimidation/Retaliation Charge**

While the solicitation to commit murder charge was pending, Hall's then-girlfriend (Angela Reeves) contacted Defendant Allen Trimble who was serving as the prosecutor of the charge. [*Id*. at ¶¶ 58-63] Reeves left Trimble a voicemail in which she asserted that if Trimble did not find Hall guilty of the solicitation charge she would "deliver [Hall's] dead head to your lobby with blood all over it. You better find him guilty." [*Id*. at ¶ 61] Based on this conduct, on June 24, 2014, Bird obtained a warrant to arrest Hall for "intimidation of a legal participant. [*Id*. at ¶¶ 64, 65] In the affidavit, Bird "falsely alleged" that Hall and "his girlfriend Angie Reeves AKA Angie Hall placed 8 different phone calls to Trimble" as a means of intimidating him to obtain the arrest warrant. [*Id*. at ¶ 65] Hall asserts that this statement was false in that

---

[1]    As discussed at length in the Court's ruling on the plaintiff's motion for reconsideration, the parties dispute whether Hall was charged initially with murder or solicitation to commit murder. [Record Nos. 201] The Court is skeptical that Hall was ever charged with murder for the reasons stated in that opinion. However, for purposes of the present motion, the nature of the initial charge is not relevant. The Court will therefore assume the truth of Hall's allegation on this point.

Reeves had made all of the phone calls to Trimble without Hall's involvement and, additionally, the calls did not involve any personal threats against Trimble. [*Id*. at ¶ 67]

On June 20, 2014, in connection with the investigation of the intimidation charge, Bird executed a search warrant of Hall's grandmother's home, where Hall was residing on house arrest. [*Id*. at ¶ 70] Bird seized a number of Hall's and Reeves's possessions, including phones, computers, and documents that Hall had received from his attorney. [*Id*. at ¶ 71] Bird did not conduct any further examination or testing of the phones seized. [*Id*.]

The court dismissed the intimidation charge for failure to indict on August 29, 2014. [*Id*. at ¶ 76] The prosecutors then re-charged the offense as retaliation against a legal participant. [*Id*.] Bird interviewed Reeves regarding the phone calls to Trimble, at which point she confessed that she had been responsible for the calls. [*Id*. at ¶ 78] On February 2, 2015, Bird allegedly "gave false and perjured testimony before the Grand Jury." [*Id*. at ¶ 82] Specifically, Bird testified that Hall had left a voice mail threatening Trimble. [*Id*.] In a suppression hearing that same day, Bird gave statements that were inconsistent with those that he had made during the grand jury proceeding. [*Id*. at ¶ 96] Bird also gave conflicting and "evidently false" statements to the media and in recorded interviews in connection with the retaliation charge. [*Id*. at ¶ 97]

The grand jury then returned an indictment on the retaliation charge on March 2, 2015. [*Id*. at ¶ 83] The charge was ultimately dismissed on February 11, 2016. [*Id*. at ¶ 86]

## C. The Hindering Prosecution and Contempt Charges

Hall was also charged with hindering prosecution based on his conduct when Bird executed the search warrant in connection with the intimidation/retaliation charges. [*Id*. at ¶ 88] The plaintiff claims that, immediately upon arriving to Hall's residence to execute the

arrest and search warrants on June 20, 2014, Bird arrested Hall without advising him his Miranda rights.  [*Id*. at ¶ 89]  Bird then asked Hall where Reeves was presently located and Hall replied that he and Reeves had separated several months earlier.  [*Id*. at ¶ 91]  Bird informed Hall that he had a warrant for Reeves' arrest for intimidation of a legal participant.  [*Id*.]  However, while executing the search warrant for Hall's grandmother's residence, law enforcement found Reeves hiding in a closet.  [*Id*.]   As a result of this conduct, on June 25, 2014, Hall was arrested on a warrant for the offense of hindering prosecution or apprehension of a witness.  [*Id*. at ¶ 92]

The court discharged Hall's bond on September 25, 2015, and Hall was no longer incarcerated as of this date.  [*Id*. at ¶ 102]  Although Hall was no longer subject to bond, on October 25, 2016, the court "sua sponte" added bond conditions on the hindering charge that, among other things, prohibited Hall from contacting the prosecutor who was handling the case, Robert Hammons ("Hammons").  [*Id*.]   Later that day, "someone posing as Hall" sent Hammons an email.  [*Id*. at ¶ 104]  Hammons presented this email to the court and moved to revoke Hall's bond and hold Hall in contempt for violating bond conditions, which the court granted.  [*Id*. at ¶¶ 104, 105]  Hall "believes and avers that the new bond conditions and the subsequent email were a set[-]up by prosecutor Hammons, Bird, Reeves, or others working in conspiracy . . . ."  [*Id*. at ¶ 109]  Hall entered a guilty plea to the hindering and contempt charges on November 21, 2016.  [*Id*. at ¶ 111]

### D.    The Harassing Communications Charge

On January 26, 2015, Reeves contacted Bird to report that Hall had contacted her with the intent to intimidate, harass, annoy, or alarm her.  [*Id*. at ¶ 117]  Bird then "instructed" Reeves to speak with Hammons and obtain an arrest warrant.  [*Id*. at ¶ 118]  Hall was arrested

on this charge, but was released on March 26, 2015, after posting bond.  [*Id*. at ¶¶ 118, 120]

Hammons moved to dismiss the charge on March 21, 2016, because Reeves's conduct was

inconsistent with her allegations against Hall.  [*Id*. at ¶ 122]  The court dismissed the charge

on that date.  [*Id*.]

### E.     The Insurance Fraud Charge

Hall was charged with insurance fraud after reporting to his insurance company that

Reeves had lost his fur coat.  [*Id*. at ¶ 125]  The insurance company initiated an investigation

in 2013 and the Commonwealth later presented the charge to the grand jury.  [*Id*. at ¶¶ 126,

132]  Hall was indicted on this charge on March 2, 2015.  [*Id*. at ¶ 123]  The Commonwealth

later dismissed the charge on November 12, 2015.  [*Id*. at ¶ 140]

## II.

Defendants Bird and the City of Williamsburg have filed a joint motion to dismiss or,

alternatively, for judgment on the pleadings.  [Record No. 111]  Bird and the City of

Williamsburg filed a joint answer to the Amended Complaint on April 26, 2017.  [Record No.

106]  Because the pleadings have now closed, the motion is one for judgment on the pleadings

under Rule 12(c) rather than a motion to dismiss under Rule 12(b)(6).  *See* Fed. R. Civ. P.

12(c) ("After the pleadings are closed . . . a party may move for judgement on the pleadings.").

The distinction makes little practical difference because motions for judgment on the pleadings

are reviewed using the same standard that applies to motions to dismiss.  *JPMorgan Chase

Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).

A court evaluating a motion for judgment on the pleadings must "construe the

complaint in the light most favorable to the plaintiff, accept all of the complaint's factual

allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts

in support of his claim that would entitle him to relief." *Engler v. Arnold*, 862 F.3d 571, 574 (6th Cir. 2017) (internal quotation marks and citation omitted). A complaint will not survive a motion for judgment on the pleadings unless it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Although the complaint need not contain "detailed factual allegations" to survive a motion for judgment on the pleadings, the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). The court is not required to accept as true legal conclusions cast in the form of factual allegations if those conclusions cannot be plausibly drawn from the facts as alleged. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## III.

Hall brings numerous claims for relief, each asserted against all defendants. Hall's federal claims include: malicious prosecution, deprivation of liberty,[2] behavior that shocks the

---

[2] The alleged "deprivation of liberty" is asserted as a single claim, but alleges violations of several separate constitutional provisions: unreasonable search and seizure in violation of the Fourth Amendment, failure to provide a speedy trial in violation of the Sixth Amendment, infliction of cruel and unusual punishment in violation of the Eighth Amendment, and attempting to coerce confessions in violation of the Fifth Amendment. These alleged violations of specific constitutional provisions will be addressed as distinct claims.

conscience, and abuse of process. His state claims include: intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, defamation, false imprisonment, malicious prosecution, abuse of process, and respondeat superior. The defendants argue that they are entitled to judgment on the pleadings because of the applicable statutes of limitations, immunity, and because of the plaintiff's failure to state a claim upon which relief can be granted.

A plaintiff proceeding on a claim under 42 U.S.C. § 1983 must show that he was deprived of a right secured by the Constitution or by the laws of the United States and that the deprivation was caused by person acting under color of law. *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

## A. Defendant Bird

### 1. Official Capacity Claims

Hall's Complaint names Bird in his official and individual capacities. [Record No. 31] However, "[a] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted). Hall's official capacity claims will be dismissed. *See C.K. v. Bell County Bd. of Educ.*, 839 F. Supp. 2d 881, 884-85 (E.D. Ky. 2012).

### 2. Statute of Limitations

Many of Hall's claims against Bird are barred by the applicable statutes of limitations. The argument that a claim is untimely is an affirmative defense on which the defendant bears the burden of proof. *Rembisz v. Lew*, 590 F. App'x 501, 503 (6th Cir. 2014) (citation omitted).

Dismissing a claim as untimely is appropriate if "the allegations in the complaint affirmatively show that the claim is time-barred." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).

### i. Federal Claims

Claims asserted under § 1983 are governed by the applicable state law statute of limitations. *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (citations omitted). As a result, the timeliness of Hall's § 1983 claims will be determined by reference to Kentucky's statute of limitations for personal injury claims, which requires that the action be "brought within one year after the cause of action accrues." KRS 413,140(1). Hall filed his claim on December 28, 2016. All claims that accrued before December 28, 2015, are barred by the statute of limitations.

Federal law controls the determination of when the statute begins to run for a particular claim. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). Under federal law, a § 1983 action accrues "when the plaintiff knew or through the exercise of reasonable diligence should have known of the injury that forms the basis of his action." *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003) (citation omitted). The analysis of when the plaintiff should have known of his injury is an objective one based on the occurrence of the event that "should have alerted the typical lay person to protect his or her rights." *Id.* (internal quotation marks and citation omitted). It is thus necessary to identify the alleged injuries that should have made Hall "aware that [his] rights had been violated and therefore started the clock on [his] statute of limitations." *Printup v. Director, Ohio Dept. of Job and Family Services*, 654 F. App'x 781, 785 (6th Cir. 2016).

The statute of limitations was discussed at length in the Court's prior opinion, and much of that analysis applies to the present case. For the reasons previously stated, Hall's malicious prosecution claim is timely to the extent that it is based on the retaliation charge, solicitation charge, hindering and contempt charges, and/or harassing charge. Hall's speedy trial and civil conspiracy claims are also timely. Hall's false arrest claim under the Fourth Amendment is untimely, as is any claim for a violation of the Eighth Amendment.

Hall asserts claims against Bird based on Bird's conduct when arresting Hall and executing a search warrant in connection with the intimidation charge. Specifically, Hall claims that Bird violated his Fourth Amendment right to be free from unreasonable searches and seizures and his Fifth Amendment rights against self-incrimination for failure to read Hall's Miranda rights. The arrest and execution of the search warrant occurred on June 20, 2014. [Record No. 31, ¶ 89] As of that date, Hall had been alerted to the existence of any claim that he may have under the Fourth or Fifth Amendments. His claims therefore accrued on this date, over a year before he filed them, and they are untimely.

Hall claims that Bird violated Hall's constitutional rights by withholding exculpatory evidence. This claim accrued when Hall had reason to know that the exculpatory evidence had not been disclosed to him. *See D'Ambrosio v. Marino*, 747 F.3d 378, 384 (6th Cir. 2014). Hall's exculpatory evidence claim against Bird is based on Angela Reeves's alleged confession that she was entirely responsible for the phone calls to Defendant Trimble and that Hall did not play a role in the calls.[3] [Record No. 31, ¶ 181] According to the Complaint, Bird obtained

---

[3] Hall also references a statement from Time Warner in which Time Warner explained the type of information that is and is not established by an IP address. Bird cannot be responsible for disclosing this evidence because the Complaint does not allege that Bird had any involvement with it. Additionally, the type of information that is disclosed by an IP

this confession from Reeves during an interview that took place on September 24, 2014. [*Id.* at ¶ 78] While the date of the statement is clear, the date on which Hall either knew or should have known of the statement is not clear from the Complaint. Because it is not clear from the Complaint's allegations that the claim is time-barred, the Court will assume that it is timely.

Hall's claims for deprivation of liberty, behavior that shocks the conscience, and abuse of process are also timely. Hall does not specify the conduct that provides the factual basis for these claims. The Complaint alleges that on October 25, 2016, Defendant Hammons fabricated an email from Hall that he then used to move the court to revoke Hall's bond and hold Hall in contempt. [Record No. 31, ¶¶ 104-10] According to Hall, Bird was involved in the creation of this fabricated email. [*Id.* at ¶ 109] Because this conduct occurred within a year of the date that Hall filed his claims, these claims are timely to the extent that they are based on the allegedly fabricated email.

### ii. State Claims

Hall's state law claims are governed by the Kentucky statutes of limitations. *See Curtis v. State Farm Fire and Cas. Co.*, 617 F. App'x 517, 518 (6th Cir. 2015) (citations omitted). Under Kentucky law, a claim for infliction of emotional distress is governed by a five-year statute of limitations. *Craft v. Rice*, 671 S.W.2d 247, 251 (Ky. 1984).[4] The remaining state

---

address is a generally available and verifiable fact that does not qualify exculpatory evidence. Hall cannot maintain a claim based on the Time Warner statement. Hall also generally references "other evidence" that the defendants had a duty to disclose. However, the Court has not identified any other allegations of withheld evidence that could be considered exculpatory.

[4]     As discussed in the Court's prior decision, Kentucky courts do not appear to have established whether negligent infliction of emotional distress claims are subject to a five-year or one-year statute of limitations. Therefore, the Court will assume that the claim is controlled by the longer five-year statute of limitations period.

law claims are subject to a one-year statute of limitations. KRS 413.140. Hall's claims accrued on the date that the fact of his injury "became objectively ascertainable." *Wiseman v. Alliant Hospitals, Inc.*, 37 S.W.3d 709, 713 (Ky. 2000).

Consistent with the more detailed analysis of the Court's previous opinion, Hall's malicious prosecution claim is timely to the extent that it is based on the retaliation charge, solicitation charge, hindering and contempt charges, and/or harassing charge. Hall's claims for negligent infliction of emotional distress, intentional infliction of emotional distress, and respondeat superior are also timely. Additionally, the same analysis that applied to Hall's federal abuse of process claim also applies to his state abuse of process claim such that this claim is timely. Conversely, Hall's claims for false imprisonment and negligence are untimely.

Hall's claim against Bird for defamation is untimely. Hall's defamation claim is based on the allegation that Bird made knowingly false statements to the media regarding Hall's criminal charges. [Record No. 31, ¶ 230] The most recent allegations of false statements are Hall's allegations that Bird gave false testimony before the grand jury and subsequently gave false statements to the media in connection with Hall's indictment on the retaliation charge, which occurred in February 2015. [*Id.* at ¶ 97] Hall's claim accrued at the time that the statements were made and, therefore, is time-barred.

### 3. Federal Claims

#### i. Malicious Prosecution

Hall makes a claim for malicious prosecution under federal law. A plaintiff seeking relief on such a claim must allege that: (1) a criminal prosecution was initiated and the defendants made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause to prosecute; (3) the plaintiff suffered a deprivation of liberty; and (4) the

criminal proceeding was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010). As stated above, after application of the statute of limitations, Hall can only maintain a malicious prosecution claim based on the solicitation charge, retaliation charge, the hindering and contempt charges, and/or the harassment charge.

The term "participated" as used in the first element of the claim requires that the plaintiff allege that the officer participated "in a way that aid[ed] the decision, as opposed to passively or neutrally participating." *Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015) (internal quotation marks and citation omitted). In *Webb*, the court determined that one law enforcement officer had sufficiently participated in the decision to initiate a prosecution because the grand jury indicted the plaintiff based on the officer's testimony. *Id*. at 663. Conversely, other officers played only a passive or neutral role in the decision to prosecute because their conduct did not influence either the grand jury's decision to indict or the prosecutor's decision to bring charges. *Id*.

Hall cannot maintain a malicious prosecution claim on the solicitation or harassment charges because he fails to adequately allege that Bird participated in the decision to prosecute these charges. The Complaint contains no allegations suggesting that Bird had any involvement with this charge. Hall has also failed to adequately allege that Bird participated in the decision to prosecute Hall on the harassing communications charge. According to the Complaint, Reeves came to Bird to report that Hall had been harassing her by phone call, text, and email. Bird then directed Reeves to take her report to Defendant Hammons (the prosecutor on the charge) who obtained an arrest warrant. [*Id*. at ¶ 118] The Complaint does not allege that Bird submitted an affidavit, testified before the court or the grand jury, or that Hammons consulted with Bird before obtaining an arrest warrant. Directing a purported victim to discuss

the alleged crime with a prosecutor is passive or neutral involvement that does not rise to the level of participation necessary to maintain a malicious prosecution claim.

But even if Bird had participated in the decision to prosecute on the harassment charge, Hall could not maintain a malicious prosecution claim because he fails to allege that there was a lack of probable cause to prosecute him for this charge. According to the Complaint, Reeves reported that Hall had been contacting her with intent to intimidate, harass, annoy, or alarm her. [*Id*. at ¶ 117] Hammons then obtained an arrest warrant, which necessarily required a neutral judge's conclusion that there was probable cause to arrest for this offense. [*Id*. at ¶ 118] Hall does not allege that Reeves misrepresented Hall's communications with her or that the warrant was obtained based on fabricated statements. Absent some allegation to indicate that the communications did not occur or did not qualify as harassment, Hall has failed to properly allege that he was prosecuted without probable cause.

Hall also cannot maintain a malicious prosecution claim based on the hindering or contempt charges. It is a prerequisite for a malicious prosecution claim that the proceeding end in the plaintiff's favor. A guilty plea does not qualify as a favorable termination and bars a malicious prosecution claim. *See Walker v. Schaeffer*, 854 F.2d 138, 142 (6th Cir. 1988). Because Hall pleaded guilty to hindering and contempt, he cannot maintain a malicious prosecution claim on either charge.

Hall has adequately alleged a malicious prosecution claim for the retaliation charge. According to the Complaint, Bird arrested Hall for intimidation of a legal participant, later re-indicted as retaliation against a legal participant, based on phone calls that Reeves made to prosecutor Trimble. [Record No. 31, ¶ 64] Bird obtained a warrant based on Bird's "false[]" allegations in the affidavit that Hall and Reeves acted together in placing threatening phone

calls to Trimble. [*Id*. at ¶ 65] However, Hall alleges that he had no involvement with the phone calls and, in any event, the calls were not threatening. [*Id*. at ¶ 67] Hall further alleges that his innocence was confirmed when Bird interviewed Reeves and she confessed that she was solely responsible for the phone calls. [*Id*. at ¶ 78] The grand jury later indicted Hall on the retaliation charge based on Bird's "false and perjured testimony" that Hall had left Trimble a threatening voice mail. [*Id*. at ¶ 82]

The elements of a malicious prosecution claim are satisfied. Bird clearly participated in the decision to bring charges based on his submitting an affidavit to obtain an arrest warrant and testifying before the grand jury. Additionally, assuming the truth of Hall's allegations, Hall had no involvement in the phone calls and Bird lacked probable cause to arrest on the basis of communications for which Hall was not responsible. Hall was then held in custody on the charge. The charge was ultimately dismissed, thereby terminating the proceeding in Hall's favor.

Additionally, taking Hall's allegations as true, Bird is not entitled to qualified immunity for his conduct. Law enforcement officers are entitled to qualified immunity when their conduct "does not violate established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S.Ct. 548, 551 (2017). The Fourth Amendment clearly establishes the right to be free from malicious prosecution. *King v. Harwood*, 852 F.3d 568, 583 (6th Cir. 2017). Further, an officer is not entitled to qualified immunity where he "knowingly or recklessly" makes false statements in an affidavit or before a grand jury and these statements lead to an individual's prosecution without probable cause. *See id*. *According to the Complaint*, that is exactly what Bird did in this case—Bird falsely testified before the grand jury that Hall had made the phone calls despite having knowledge

that Hall had not participated in the calls. Based on these allegations, Bird is not entitled to qualified immunity *at this stage of the proceedings*.

The defendant argues that Hall cannot maintain this malicious prosecution claim because a grand jury indicted Hall for the retaliation offense. It is the general rule that an indictment, "fair on its face," establishes probable cause. *See Sanders v. Jones*, 845 F.3d 721, 728 (6th Cir. 2017) (citation omitted). Under this rule, a grand jury indictment would bar a plaintiff's malicious prosecution claim. However, there are exceptions under which a plaintiff who is indicted for an offense may nonetheless properly allege that law enforcement lacked probable cause to prosecute him.

First, a plaintiff may be able to overcome the indictment's presumption of probable cause by alleging that a defendant obtained the indictment by knowingly or recklessly presenting false information to the grand jury. *Id.* at 729. However, law enforcement officers are entitled to absolute immunity for their testimony before a grand jury. *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012). Based on the *Rehberg* rule, a plaintiff cannot rely on a law enforcement officer's allegedly false grand jury testimony to overcome the indictment's presumption of probable cause. *See Sanders*, 845 F.3d at 730. As a result, Bird's allegedly false grand jury testimony cannot be used to overcome the presumption that the grand jury's indictment established probable cause to prosecute Hall on the retaliation charge. This exception does not apply in the present case.

There is an additional exception under which the indictment will not protect a law enforcement officer who falsifies an affidavit or fabricates evidence. *King*, 852 F.3d at 587. This exception applies:

where (1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or falsifies or fabricates evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony[.]

*Id*. at 587-88.  Where these elements are satisfied, "the presumption that the grand-jury indictment is evidence of probable cause is rebuttable and not conclusive." *Id*. at 588.

This exception applies to allow Hall to avoid dismissal on his malicious prosecution claim.  The Complaint alleges that Bird set the retaliation prosecution in motion by knowingly making false statements in the arrest warrant affidavit—that Hall and Reeves placed threatening phone calls to Trimble together.  [Record No. 31, ¶ 65]  These statements were material to the ultimate prosecution on the retaliation charge because, according to the Complaint, the charge was based solely on the threatening phone calls.  If Hall was not involved in the phone calls, there were no grounds on which to arrest him.  Moreover, the false statements were made in an affidavit rather than during the grand jury proceeding or in preparation for that proceeding so immunity does not apply.

The defendant's argument that the indictment conclusively establishes probable cause (thereby barring Hall's malicious prosecution claim) fails.  Instead, the indictment's presumption of probable cause is rebuttable.  Taking the Complaint's allegations as true, Bird lacked probable cause to initiate the retaliation prosecution against Hall for the reasons stated above.  Based on the foregoing, Hall has adequately alleged a malicious prosecution claim on this charge and it is not subject to dismissal at this time.

*ii.* Brady

Hall alleges that Bird violated Hall's due process rights by failing to disclose exculpatory evidence—Reeves's alleged confession to being solely responsible for the phone calls to Trimble. Law enforcement officers have *Brady* obligations to disclose material exculpatory evidence. *D'Ambrosio*, 747 F.3d at 389. However, law enforcement officers are not obligated to disclose exculpatory evidence "to criminal defendants directly." *Id.* (quoting *Maldowan v. City of Warren*, 578 F.3d 351, 379 (6th Cir. 2009)). Instead, *Brady* obligates law enforcement officers to disclose exculpatory evidence to the prosecutor who then "bears the responsibility of actually disclosing exculpatory information to the defense." *Id.* A defendant cannot maintain a *Brady* claim based on an allegation that an officer failed to disclose exculpatory information to *him* directly. Rather, the defendant must allege that the law enforcement officer was obligated to disclose exculpatory evidence to the prosecutor and failed to do so. *Id.* at 389-90. This requires a showing that the exculpatory value of the evidence was apparent to the officer, but the officer nonetheless concealed it from the prosecution. *Id.* at 390.

In *D'Ambrosio*, the court concluded that the plaintiff had failed to properly allege that the law enforcement officer violated his *Brady* obligations by withholding exculpatory evidence. The court observed that the plaintiff had alleged only that the law enforcement officer "was privy to" some evidence that was potentially exculpatory. *Id.* at 390. The complaint did not allege that the law enforcement officer "withheld any of this information from the prosecutor, that the prosecutor was ignorant of any of this evidence, or anything other than that [the law enforcement officer' failed to disclose this evidence to [the defendant] himself." *Id.* Disclosing exculpatory evidence to the defendant is the *prosecutor's* responsibility. *Id.* Because the plaintiff did not allege that the law enforcement improperly

failed to disclose exculpatory evidence to the prosecutor, the plaintiff did not plausibly allege his *Brady* claim against the law enforcement officer.

Hall has failed to adequately allege a *Brady* claim against Bird based on the principles discussed in *D'Ambrosio*. The exculpatory evidence at issue for this claim is Reeves's alleged confession during an interview with Bird. [Record No. ¶ 78] Like the plaintiff in *D'Ambrosio*, Hall does not allege that Bird failed to disclose this statement to the prosecutor. The Complaint alleges only, in general terms, that the "[d]efendants . . .failed or refused to disclose exculpatory evidence, including . . . Angela Reeve's [sic] confessions[.]" [*Id*. at ¶ 181] Bird cannot be responsible for failing to disclose the confession to Hall because disclosing the confession to Hall was not Bird's responsibility. The Complaint provides no basis from which to infer that Bird was obligated to disclose the confession to the prosecutor but failed to do so. As a result, Hall has not plausibly alleged that Bird withheld exculpatory evidence in violation of his *Brady* obligations and this claim must be dismissed.

### iii. Civil Conspiracy

Hall fails to properly allege a claim for civil conspiracy under § 1983. "A civil conspiracy under § 1983 is an agreement between two or more persons to injure another by unlawful action." *Webb v. United States*, 789 F.3d 647, 670 (6th Cir. 2015). A civil conspiracy claim must be alleged "with some degree of specificity[.]" *Bickerstaff v. Lucarelli*, 830 F.3d 388, 400 (6th Cir. 2016). "[V]ague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Id*.

Hall's claim is based on the conclusory and vague allegation that the defendants "agreed or conspired among themselves and with other individuals" to violate Hall's constitutional rights. [Record No. 31, ¶ 194] Hall does reference an agreement between Bird

and Hammons to fabricate an email. [*Id*. at ¶ 109] However, Hall fails to allege facts showing the existence of an agreement or any coordination between the defendants to fabricate the email or to complete the other alleged constitutional violations. The Complaint contains no factual allegations that would support an inference that the defendants acted in concert while engaging in illegal conduct. *See Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003). Hall has failed to adequately plead the existence of a civil conspiracy.

### iv. Speedy Trial

Hall claims that Bird violated his constitutional right to a speedy trial. A plaintiff cannot maintain a speedy trial violation claim against a law enforcement officer defendant absent some allegation that the officer was liable for the delay in providing a trial. *Harris v. Goins*, No. 6: 15-151-DCR, 2017 WL 3097613, at *14 (E.D. Ky. July 20, 2017). The plaintiff must allege that the law enforcement officer was responsible for the delays or colluded with the judge or prosecutors to deprive the defendant of his right to a speedy trial. *Id*. at *15. The Complaint contains no allegations suggesting that Bird is at all responsible for the delay in providing Hall with a trial. As a result, Hall fails to state a claim for a violation of his right to a speedy trial under the Sixth Amendment.

### iv. Remaining Federal Claims

Hall's remaining timely federal claims (i.e., abuse of process, behavior that shocks the conscience, and deprivation of liberty) are based on Hall's allegation that the email that was used to revoke Hall's bond conditions and charge him with contempt was "a set up by prosecutor Hammons, Bird, Reeves, or others working in conspiracy . . . .[5] [Record No. 31,

---

[5] As explained above, the Court assumed that these claims are based on the email because that is the only conduct that occurred within a year of the date that Hall's claims were filed.

¶¶ 109]  As discussed more thoroughly in the Court's prior opinion, Hall fails to plausibly allege that the defendants engaged in this conduct because he does not allege any factual matter in support of this conclusory allegation.  The Complaint contains no facts to suggest that the email was fabricated or that Bird and Hammons were the individuals responsible for fabricating the email.  Absent factual support, Hall's claim is implausible and the Court is not required to accept as true this "unwarranted factual inference[]."  *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).  Hall fails to state any claim based on the inadequately alleged fabricated email.

### 4. State Claims

#### i. Malicious Prosecution

Hall asserts a malicious prosecution claim against Bird under state law.  A plaintiff raising a malicious prosecution claim under Kentucky law must properly allege:  (1) "the defendant initiated, continued, or procured a criminal or civil judicial proceeding"; (2) without probable cause; (3) "the defendant acted with malice, which . . . means seeking to achieve a particular purpose other than bringing an offender to justice"; (4) the proceeding terminated in the plaintiff's favor; and (5) "the plaintiff suffered damages as a result of the proceeding." *Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016).

Because of the similarity of the elements of the two claims, the analysis of Hall's federal malicious prosecution claim largely applies to his state claim.  The distinction between Hall's federal and state malicious prosecution claims is whether Hall has properly alleged malice.  The malice element "can be inferred from lack of probable cause."  *Phat's Bar & Grill v. Louisville Jefferson Cty. Metro Gov't*, 918 F. Supp. 2d 654, 665 (W.D. Ky. 2013) (quoting *Massey v. McKinley*, 690 S.W.2d 131, 134 (Ky. 1985)).  As stated above, Hall has sufficiently

alleged that Bird lacked probable cause to arrest him on the retaliation charge. He thus has plausibly alleged a claim that Bird maliciously prosecuted him for retaliation against a legal participant.[6]

### ii. Intentional Infliction of Emotional Distress

A plaintiff claiming intentional infliction of emotional distress under Kentucky law must sufficiently allege: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable such that it offends generally accepted standards of decency and morality; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress was severe. *Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky. 1999). The first element requires the plaintiff to allege that the "actor had the specific purpose of causing emotional distress (intentional) or intended a specific conduct and knew or should have known that it would cause emotional distress rather than a personal (physical) injury (recklessness)." *Childers v. Geile*, 367 S.W.3d 576, 580 (Ky. 2012) (citation and emphasis omitted).

Hall alleges that all of the defendants are liable for intentional infliction of emotional distress based on their conduct in "intentionally and/or recklessly" maliciously prosecuting him, withholding and fabricating evidence, and failing to conduct an adequate investigation, among other things. [Record No. 31, ¶ 208] Hall's conclusory allegation that Bird acted intentionally is insufficient to satisfy the applicable pleading standard. Hall alleges no facts that would suggest that Bird acted with the intent to cause him emotional distress, or that Bird engaged in conduct that he should have known would cause emotional distress. Additionally,

---

[6]     Hall's claim fails with respect to all other charges for the reasons explained above.

the Complaint does not contain any factual allegations of conduct that would qualify as outrageous or intolerable. Hall has failed to state a claim for intentional infliction of emotional distress.

### iii. Negligent Infliction of Emotional Distress

A negligent infliction of emotional distress claim requires that a plaintiff plead: "(1) the defendant owed a duty of care to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." *Osborne v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012). A "plaintiff cannot proceed with a claim for negligence where the claim is really a malicious prosecution claim." *Tunne v. Paducah Police Dep't*, No. 5: 08-CV-188-R, 2010 WL 323547, *11 n. 4 (W.D. Ky. January 21, 2010) (citing *Hill v. Willmott*, 561 S.W.2d 331, 334 (Ky. Ct. App. 1978)). The crux of Hall's claim for negligent infliction of emotional distress is that Bird initiated and continued a prosecution against him without probable cause. Hall's claim is, in effect, a claim for malicious prosecution. However, Kentucky law does not permit plaintiffs to bring "negligence claims against the defendants under the same facts that constitute his other claims." *Bertram v. Federal Express Corp.*, No. CIV.A. 05-28-C, 2008 WL 170063, at *7 (W.D. Ky. January 17, 2008) (citing *Hill*, 561 S.W.2d at 334). Hall cannot maintain his claim for negligent infliction of emotional distress.

### iv. Abuse of Process

As stated above, Hall's abuse of process claim is necessarily based on Bird's alleged conduct in fabricating an email. The claim fails because Hall has not plausibly alleged that the email was fabricated or that Bird participated in its fabrication. Moreover, even if Hall had adequately alleged that this conduct occurred, he would still fail to state an abuse of process

claim. The elements of an abuse of process claim are that the defendant: (1) must act with an ulterior purpose, and (2) must engage in a "willful act in the use of the process that is not proper in the regular course of the proceeding." *Sprint Communications Co., L.P. v. Leggett*, 307 S.W.3d 109, 114 (Ky. 2010) (citation omitted). To satisfy the second element, the plaintiff must allege "some act or use of the process to secure a collateral advantage outside the criminal proceeding." *Id.*

Hall has not alleged any facts that would satisfy the second element of the abuse of process claim. Taking the Complaint's allegations liberally, there is some indication that Bird and the other defendants harbored some personal bias against Hall, which could qualify as an ulterior motive. However, the allegations concerning Bird are limited to Bird's conduct in the course of the criminal prosecution. The Complaint does not indicate that Bird was acting for the purpose of some personal gain beyond the scope of the criminal proceeding. Hall has failed to state a claim for abuse of process.

### v. Respondeat Superior

Hall has attempted to assert a claim for "respondeat superior" against all defendants. However, respondeat superior is "the theory that where one acts through the agency of another, in legal contemplation, he is himself acting and thus is responsible for acts of his agent." *Brooks v. Grams, Inc.*, 289 S.W.3d 208, 211 (Ky. Ct. App. 2008). Respondent superior is not an independent cause of action under Kentucky law and cannot be asserted as a claim for relief. *Taylor v. JPMorgan Chase Bank, N.A.*, No. 13-24-GFVT, 2014 WL 66513, at *8, *9 (E.D. Ky. January 8, 2014). Hall's respondeat superior claim fails.

### B. Defendant City of Williamsburg

### A. *Federal Claims*

Although Hall asserts all of his claims against all defendants, including the City of Williamsburg, he often does not identify any specific conduct on the part of the City of Williamsburg that provides the basis for the claim. Most of Hall's allegations pertaining to the City of Williamsburg are asserted within a separate *Monell* claim in which he alleges that the City of Williamsburg "maintained a policy, custom, or pattern and practice of promoting, facilitating, or condoning improper, illegal, and unconstitutional investigative techniques and prosecutorial techniques . . . ." [Record No. 31, ¶ 198] Hall then alleges that the City of Williamsburg failed to train its employees regarding "fundamental investigative tasks implicating the constitutional rights of witnesses and suspects." [*Id*. at ¶ 199]

A municipality cannot be held vicariously liable for its employees' actions under § 1983. *See Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Instead, a plaintiff seeking to establish municipal liability must plausibly allege some wrongdoing in which the municipality itself directly engaged. *Id*. Specifically, the plaintiff must allege (1) that his constitutional rights were violated; (2) that the violations were committed under color of state law; and (3) that the municipality's policy or custom caused the violations. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff must adequately allege at least one of the following municipality policies or customs: "(1) the existence of an illegal policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance of or acquiescence to federal rights violations." *D'Ambrosio*, 747 F.3d at 386 (internal quotation marks and citation omitted).

As an initial matter, Hall cannot plausibly maintain a claim against the City of Williamsburg based on the alleged unconstitutional conduct of the majority of the defendants

named in this case. According to the Complaint, Defendant Trimble is an attorney for Whitley County, Kentucky; Defendant Hammons is also an attorney for Whitely County, Kentucky; Defendant Steele is an attorney for Laurel County, Kentucky, and Defendant Baxter is a law enforcement officer for the Kentucky State Police. [Record No. 31, ¶¶ 3-7] Hall does not explain how the City of Williamsburg's customs or policies could have possibly influenced the conduct of individuals who were employed by other entities. Hall's municipal liability claims fail to the extent that they are based on the alleged unconstitutional conduct of these defendants. Hall can only maintain municipal liability claims against the City of Williamsburg based on the alleged unconstitutional conduct of its actual employees, which includes Defendant Bird. [*Id*. at ¶ 4]

Pleading standards are interpreted strictly for plaintiffs seeking to impose municipal liability under § 1983. *Hutchison v. Metro. Gov't of Nashville and Davidson, Cnty*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010). A plaintiff's claim will not survive a motion to dismiss if it is based on no more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 556 U.S. at 678. The plaintiff is required to allege "facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hutchison*, 685 F. Supp. 2d at 751 (citation omitted). In the specific context of municipal liability, the plaintiff "must describe what the official custom or policy was and describe how it was violated." *Kustes v. Lexington-Fayette Urban Cnty. Gov't*, No. 5: 12-323-KKC, 2013 WL 4776343, at *5 (E.D. Ky. September 3, 2013).

For example, in *Hutchison*, the plaintiff alleged injury that occurred as a result of the municipality's "custom, policy, or practice of stopping vehicles and ordering passengers to exit the vehicles without sufficient cause and in disregard of passengers' disabilities . . . ."

*Hutchison*, 685 F. Supp. 2d at 751. The court reasoned that this allegation did not satisfy pleading standards because it amounted no more than a legal conclusion without supporting factual assertions. *Id*. The plaintiff detailed the events of a traffic stop but did not "include any facts related to a municipal policy on probable cause and traffic stops, or a municipal custom, policy or practice regarding drivers or passengers who are disabled." *Id*. The plaintiff also asserted that the municipality "failed to adequately train its officers in stopping vehicles and/or ordering passengers out of those vehicles in disregard of their disabilities and injuries" but gave no factual support. *Id*. The court concluded that the pleadings failed to state a plausible claim to relief.

Similarly, the plaintiff failed to adequately allege a municipal custom or policy that caused a constitutional violation in *Vidal v. Lexington-Fayette Urban Cnty Gov't*, No. 5: 13-117-DCR, 2014 WL 4418113 (E.D. Ky. September 8, 2014). The plaintiff alleged that the municipality "negligently trained and/or supervised [the officer] with respect to arrest, proper police procedures, use of excessive force, and use of force and seizure policies." *Id*. at *3-*4. This allegation was insufficient because it was a legal conclusion that lacked further factual support. *Id*. at *4. The court dismissed the claim because it did no more than "recite[] the legal requirements for a claim against a municipality without any factual allegations that would 'raise a right to relief above the speculative level.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

Here, the majority of Hall's allegations relating to the City of Williamsburg's liability are vague recitations of the elements for a claim that are unsupported by any factual allegations. For example, Hall alleges that the "City of Williamsburg by and through their final policymakers, with deliberate indifference, maintained a policy, custom, or pattern and practice of promoting, facilitating, or condoning improper, illegal, and unconstitutional

investigative techniques . . . ." [Record No. 31, ¶ 198]  The Complaint contains several similar allegations that fail to identify a particular custom or even the constitutional right that the custom violates.  [*Id*. at ¶¶ 199-204]  These allegations are deficient under pleading standards. Hall cannot reasonably expect entitlement to relief on the basis of a claim that is entirely unsupported by any particularized factual support.  Hall's legal recitations of the elements of a municipal liability claim fail to state a plausible claim to relief.

Hall's most specific allegation of municipal liability is that the City of Williamsburg failed "to train anyone in their *Brady* duties" by failing "to ensure that anyone involved understood their *Brady* duties and carried them out in practice."  [Record No. 31, ¶ 155, 157] Even assuming that this allegation adequately identifies a particular policy or custom, it nonetheless fails to state a claim because Hall fails to adequately allege that this policy caused a constitutional violation.  The only specific factual allegations relating to a City of Williamsburg employee's violation of a *Brady* violation is Bird's conduct regarding Reeves's confession.  [*Id*. at ¶ 78]  However, as explained above, Hall has failed to state that Bird violated his constitutional obligations under *Brady*.  Because Hall has not adequately alleged a constitutional violation under *Brady*, he cannot maintain a municipal liability claim on this basis.  Hall's claims against the City of Williamsburg for municipal liability under § 1983 fail.

B.      *State Claims*

Under Kentucky law, municipalities are not afforded the same degree of immunity from tort liability as county and state governments.  *Schwindel v. Meade County*, 113 S.W.3d 159, 165 (Ky. 2003).  Instead, a "municipality is immune only for torts committed in the performance of legislative or quasi-legislative functions, and can otherwise be held vicariously liable for the torts of its employees."  *Id*. (citation omitted); *see also Wilkerson v. City of*

*Frankfort, Ky.*, No. 3: 08-12-DCR, 2009 WL 1033828, at *10 (E.D. Ky. April 16, 2009). The defendants whose claims have already been dismissed were not employed by the City of Williamsburg, so vicarious liability does not apply for these defendants' actions. The issue is whether the City of Williamsburg may be held vicariously liable for Bird's alleged wrongful conduct.

The City of Williamsburg may only be liable on a vicarious liable theory if its employees are first found liable. *See Haugh v. City of Louisville*, 242 S.W.3d 683, 687 (Ky. Ct. App. 2007) ("[V]icarious liability is not possible without primary liability."). The City of Williamsburg is not liable for those claims against Bird that have been dismissed.

The only remaining claim is for malicious prosecution on the retaliation charge. Under vicarious liability principles, a municipality is liable for the actions of its employee when the employee acted within the scope of his employment. *Louisville/Jefferson Cnty. Metro Gov't v. Braden*, 519 S.W.3d 386, 393 (Ky. Ct. App. 2017). An employee acts within the scope of his employment when he engages in the conduct at issue while acting on the employer's behalf. *Id.* The City of Williamsburg employs Bird as a law enforcement officer. Bird was acting as a law enforcement officer when he allegedly arrested Hall and participated in his prosecution on a charge that was unsupported by probable cause. Hall may maintain a claim against the City of Williamsburg on the claim for malicious prosecution of the retaliation charge on a theory of vicarious liability.

## IV.

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1.      Defendant Bird's motion for judgment on the pleadings [Record No. 111] is **GRANTED** with respect to all claims against him in his official capacity.

2.      Defendant Bird's motion for judgment on the pleadings [Record No. 111] is **GRANTED**, in part, and **DENIED**, in part, with respect to the claims against him in his individual capacity, consistent with this Memorandum Opinion and Order.

      a.      Judgment on the pleadings is **GRANTED** with respect to Count II (Due Process), Count III (Behavior that Shocks the Conscience), Count IV (Civil Conspiracy), Count VI (Intentional Infliction of Emotional Distress), Count VII (Negligent Infliction of Emotional Distress), Count VIII (Negligence), Count X (Defamation), Count XI (False Imprisonment), Count XIII (Abuse of Process), and Count XIV (Respondeat Superior).

      b.      Judgment on the pleadings is **DENIED** with respect to Count I (Federal Malicious Prosecution) and Count XII (State Malicious Prosecution).

2.      Defendant City of Williamsburg's motion for judgment on the pleadings [Record No. 111] is **GRANTED**, in part, and **DENIED**, in part, consistent with this Memorandum Opinion and Order.

      a.      Judgment on the pleadings is **GRANTED** with respect to Count I (Federal Malicious Prosecution), Count II (Due Process), Count III (Behavior that Shocks the Conscience), Count IV (Civil Conspiracy), Count VI (Intentional Infliction of Emotional Distress), Count VII (Negligent Infliction of Emotional Distress), Count VIII (Negligence), Count X (Defamation), Count XI (False Imprisonment), Count XIII (Abuse of Process), and Count XIV (Respondeat Superior).

      b.      Judgment on the pleadings is **DENIED** with respect to Count XII (State Malicious Prosecution).

This 24th day of August, 2017.



Signed By:

*Danny C. Reeves*

United States District Judge