UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| TRISTAN JAMES HALL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 16-304-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CITY OF WILLIAMSBURG, | ) | **MEMORANDUM OPINION** |
| KENTUCKY, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court entered a Judgment in this matter on February 27, 2018, dismissing Plaintiff Tristan Hall's claims, in their entirety, with prejudice. [Record No. 234] Hall subsequently filed ten post-judgment motions which are now pending for consideration. [Record Nos. 237-44; 246; 248] Those motions will be denied for the reasons that follow.

**I.**

During the sixteen months that this matter has been litigated, Plaintiff Tristan Hall has repeatedly demonstrated a lack of respect for the Court, his adversaries, and the judicial process.[1] Despite an Order directing Hall to "have no contact with the defendants," [Record No. 54],[2] and a separate Order instructing the parties to "avoid disparaging personal remarks or acrimony toward opposing counsel," [Record No. 57, ¶ 8], Hall has sent numerous improper,

---

[1] This is despite Hall's repeated claims to "love the law." [*See* Record No. 255-1, pp. 44, 51, 81, 94.]

[2] Many of Hall's most inappropriate e-mails were sent to defendants after they were dismissed from this action. Hall claims that this was permissible because at that point they were no longer "defendants" protected by the no contact Order. [Record No. 120]

- 1 -

harassing, and vulgar e-mails to the defendants.[3]  [Record No. 255-1]  This behavior has made its way into Court filings, [Record No. 190, p. 3; Record No. 255-1, p. 47], and it appears to mirror his behavior in other proceedings and outside the courtroom.  [*See* Record Nos. 58-26; 59-22, pp. 31-32; 59-4; 59-5; 59-8; 60-27.]

Hall has repeatedly sought extensions of time and leave to file additional pleadings, [Record Nos. 131; 140; 147; 176; 184; 225; 229], failed to comply with this Court's Orders, [Record Nos. 207; 212; 220; 224], and challenged this Court's Orders as if they were mere briefs from an opposing party.  [Record Nos. 129; 143; 148; 172; 195]  And despite the Court's direction to "refrain from engaging in or employing dilatory tactics or tactics that are intended or designed, directly or indirectly, to cause unnecessary expense or prevent the orderly administration of justice," [Record No. 57, ¶ 2], Hall has stated that he plans to pursue this litigation "[e]ven if the point becomes little more than to cause people to spend more money and time and trouble."  [Record No. 255-1, p. 47]

Despite this continuous course of unprofessional conduct, both Hall's adversaries and the Court have demonstrated extraordinary patience throughout this litigation. [*See* Record Nos. 42; 136; 178; 184; 223; 225-1, pp. 41-42, 98; 255, p. 18; 258, p. 4 n.1.]  However, Hall's claims were eventually dismissed, and a Judgment was entered on February 27, 2018.  [Record Nos. 233; 234]  Now, Hall has once again filed several challenges to this Court's Orders.  He seeks to disqualify the undersigned, vacate the Order dismissing his claims and the

---

[3] Hall's explanation that "99%" of these e-mails "were sent while intoxicated" makes his behavior less, not more, excusable.  [Record No. 280-1, pp. 9-10]

corresponding Judgment, sanction the defendants' attorney, and re-open this action to hold an evidentiary hearing. [Record Nos. 237-44; 246; 248]

## II.

The first motions to be addressed are Hall's motions to disqualify the undersigned and vacate all rulings in this matter.[4] [Record Nos. 244, 246] Hall's argument is based on the fact that the Law Offices of Howard O. Mann, P.S.C., employed the undersigned's sister from approximately June 2001 to July 2003, and the undersigned's nephew from approximately April 2013 to June 2015.[5] [Record No. 255, Exhibit 1, ¶¶ 3-4] This action was filed on December 28, 2016, approximately 15 years after the undersigned's sister's employment at the

---

[4] Hall previously asked the Court to stay a ruling on the defendant's motion to dismiss and renewed motion for costs, in part, so he could file a motion for recusal. [Record No. 225] When that motion was denied, Hall sought reconsideration, in part, because he believed the undersigned had "convey[ed] an appearance of impropriety and fail[ed] to uphold the integrity and independence of the judiciary." [Record No. 228] The Court denied the motion, finding that "Hall's allegations of bias are baseless," and that "delaying the resolution of this matter so that he can file his proposed [] motion for recusal would be a waste of the parties' resources—and the Court's." [Record No. 231] Hall has nonetheless persisted in filing his motion to recuse, post-judgment, based on the same relationships that the Court previously indicated did not require the undersigned's recusal. [Record Nos. 244, 246]

[5] Hall's motion refers to "Trimble & Mann, P.S.C.," which he calls "the former law firm of Defendant Trimble and Opposing Counsel Mann, who are separate parties in this Action." [Record No. 244, ¶ 1] Allen Trimble, Commonwealth Attorney for Whitley County, Kentucky, was a defendant in this action. Howard O. Mann represents Defendant Robert Hammons, and is not himself a "party" to this action. Mann and Defendant Trimble worked together approximately 18 years ago. [Record No. 255-1, ¶ 2] Since then, Mann has solely owned the law firm and practiced under the name of Law Offices of Howard O. Mann, P.S.C., except for a four year period from approximately August 2011 to October 2015, when Graham C. Trimble, the son of Defendant Trimble, practiced with Mann and the firm utilized the assumed name of Mann & Trimble, P.S.C. [Id. ¶ 2 n.1] Additionally, the undersigned's sister briefly worked as a law clerk for the Whitley County Commonwealth's Attorney's office from approximately June 2000 to March 2001, and maintained a professional relationship with Defendant Trimble during that time. [Id. ¶ 8]

Law Offices of Howard O. Mann ended, and 18 months after the undersigned's nephew's employment ended. [Record No. 1] Consequently, neither family member ever participated in, consulted about, or performed any work in this action. Likewise, neither family member has any interest, financial or otherwise, in the outcome of this proceeding. [Record No. 255, Exhibit 1, ¶¶ 3-4, 11]

Hall nonetheless argues that the undersigned's family members' employment with one of the defendants and another defendant's attorney before this litigation began creates an appearance of partiality requiring recusal under 28 U.S.C. § 455. [Record No. 244] Subsection (a) of that statute requires a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "This standard is *objective* and is not based 'on the subjective view of a party.'" *Wheeler v. Southerland Corp.*, 875 F.2d 1246, 1251 (6th Cir. 1989) (citation omitted) (emphasis in original). Recusal is required "only if a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Id.* (quotations and citations omitted).

Subsection (b) requires recusal when a person within the third degree of relationship to the judge or his spouse: (i) is a party to the proceeding, or an officer, director, or trustee of a party; (ii) is acting as a lawyer in the proceeding; (iii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding; or (iv) is to the judge's knowledge likely to be a material witness in the proceeding. 28 U.S.C. § 455(b)(5).

Section 455's recusal provisions are "not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice." *Ragozzine v. Youngstown State Univ.*, 4:13-cv-750, 2014 WL 1153715, at *3 (N.D. Ohio Mar. 20, 2014), *aff'd*, 783 F. 3d at 1079 (6th Cir. 2015) (citation omitted). "Although a judge is obliged to disqualify

himself when there is a close question concerning his impartiality, he has an equally strong duty to sit where disqualification is not required." *United States v. Angelus*, 258 F. App'x 840, 842 (6th Cir. 2007) (citation omitted).

Hall relies principally on *In re Aetna Cas. & Sur. Co.*, 919 F.2d 1136 (6th Cir. 1990), and *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988), to argue that the undersigned must recuse from this matter. Neither case is apposite. *In re Aetna* was a lawsuit brought by the Federal Deposit Insurance Corporation ("FDIC") against a bankers blanket bond issued by Aetna Casualty & Surety Co. ("Aetna"). 909 F.2d at 1136. Judge Hull initially recused himself from the case because his daughter worked for the law firm representing the FDIC, and had made an appearance in a deposition of a key witness. *Id.* at 1143. Judge Hull then re-entered the case on April 3, 1989, nearly two months before his daughter's resignation from the law firm on June 30, 1989. *Id.* The Sixth Circuit held that Judge Hull should not have re-entered the case at that time because "[t]he same circumstances that had persuaded Judge Hull to recuse himself previously . . . still prevailed on April 3, 1989." *Id.* As a result, "the FDIC-Aetna controversies were properly out of his hands at all times until June 30, 1989, the earliest date when his daughter's association with the [law] firm ended." *Id.* at 1144.[6]

In *Liljeberg*, Judge Collins was a member of the Board of Trustees of Loyola University while Loyola was negotiating to sell Liljeberg a parcel of land on which to construct a hospital. 486 U.S. at 850. "The success and benefit to Loyola of these negotiations turned, in large part,

---

[6] The concurrence found that it would not have been appropriate for Judge Hull to re-enter the case even after his daughter resigned from the law firm, because she had "act[ed] as a lawyer in the proceeding" by appearing at a deposition of a key witness, and that deposition remained in the case even after her departure from the law firm. *Id.* at 1147.

on Liljeberg prevailing in the litigation before Judge Collins." *Id.* The United States Supreme Court held that Judge Collins' presence on a board with an interest in the litigation before him created an "appearance of impropriety," requiring his recusal. *Id.* at 858-70. The Court then vacated the Judgment entered by Judge Collins, "even though his failure to disqualify himself was the product of a temporary lapse of memory" in forgetting about Loyola's interest. *Id.*

Unlike *In re Aetna*, the undersigned's family members were not employed by the Law Offices of Howard O. Mann, P.S.C., while it represented a party to this litigation, and neither family member in any way participated in this litigation. And unlike in *Liljeberg*, the undersigned is not a member of any organization with an interest in this litigation. Instead, this case falls within the general rule that the employment of a judge's family member at a law firm practicing before the judge does not require recusal where the family member "is not a partner and is not working on the case." *Doe v. N. Ky. Univ.*, 2:16-cv-28, 2017 WL 1730933, *4 (E.D. Ky. May 2, 2017) (collecting cases); *Brown v. Burch, Porter, and Johnson, PLLC*, Nos. 15-6242/6243, 2016 WL 9448027, *4 (6th Cir. Nov. 21, 2016) (holding that recusal was not required where the judge's son "did not act as a lawyer in the proceeding, and . . . was not a partner in the firm such that he would have a financial interest in the proceeding"); *Hamilton v. Gen. Elec. Co.*, 487 F. App'x 280 (6th Cir. 2012) ("The fact that the judge's son had previously worked for the law firm representing [the defendant] was insufficient to call into question the judge's impartiality or to otherwise require recusal[.]"); *Scott v. Metro. Health Corp.*, 234 F. App'x 341 (6th Cir. 2007).

Hall attempts to avoid the application of this rule by arguing that even if neither family member is "acting as a lawyer in [this] proceeding" under 28 U.S.C. § 455(b)(5)(ii), or has "an interest that could be substantially affected by the outcome of [this] proceeding" under 28

U.S.C. § 455(b)(5)(iii), the undersigned's sister is nonetheless "likely to be a material witness in [this] proceeding" under 28 U.S.C. § 455(b)(5)(iv). Hall's argument is based on his contention that the undersigned's sister is a "legitimate witness" who could be called to testify regarding dissimilarities between Defendant Trimble's conduct nearly 20 years ago, and his conduct relating to this litigation. [Record No. 280-1, pp. 6-7]

However, 28 U.S.C. § 455(b)(5)(iv) only requires recusal when the judge or his family member is "likely to be a *material* witness in the proceeding." (emphasis added). Recusal is not required "when other witnesses are available to provide the same testimony." *United States v. Lanier*, 2:14-cr-83, 2018 WL 296725, at *3 (E.D. Tenn. Jan. 3, 2018) (citations omitted). Further, "unsubstantiated speculation" that a judge or his family member may be a material witness "is not enough to require recusal under § 455(b)(5)(iv)." *Id.* (citations omitted). Hall's speculation that the undersigned's sister could be called as a "legitimate witness" is insufficient to require the undersigned's recusal from this action.

In short, the undersigned's family members' employment ended before this case began, and neither family member has ever worked on this case or acquired any interest, financial or otherwise, in the outcome of this proceeding. These relationships neither provide a basis for reasonably questioning the undersigned's impartiality under 28 U.S.C. § 455(a) nor fall within the mandatory recusal provisions of 28 U.S.C. § 455(b).[7]

---

[7] Hall's arguments that recusal is required because it is "reasonable [to presume] that Judge Reeves' sister and nephew have had a natural curiosity with this Action," it is "[possible] that Judge Reeves may have other family currently employed by Opposing Counsel," and a future financial interest . . . might develop, based upon the pattern of Judge Reeves' family members being employed by Opposing Counsel," are frivolous. [Record No. 244, p. 3 n.1] And Hall's various disagreements with adverse rulings in this proceeding provide no grounds for recusal.

Finally, because the undersigned's family members' past employment relationships do not provide a basis for reasonably questioning the undersigned's impartiality, disclosure of these relationships was not required. *See Doe*, 2017 WL 1730933 at *5-6; *Raggozzine v. Youngstown State Univ.*, 783 F.3d 1077, 1079 (6th Cir. 2015) ("When a judge makes a determination that her impartiality could not reasonably be questioned, the judge is permitted to disclose the matter to counsel in order to settle the matter or to permit a motion to recuse. But [there is] no statutory or judicial authority requiring a judge to do so."). Accordingly, Hall's motions to disqualify the undersigned and to vacate all rulings in this case [Record Nos. 244, 246] will be denied. Disqualification is not required in this matter. Instead, the undersigned is under a "strong duty to sit." *Angelus*, 258 F. App'x at 842.

### III.

Next, Hall contests the Court's Order denying his motion for an extension of time to respond to the defendants' motion to dismiss and renewed motion for costs. [Record No. 231] The defendants' motion to dismiss and renewed motion for costs was filed on February 2, 2018. [Record No. 224] Hall had until February 23, 2018, to respond to that motion, plus an additional three days for mailing. *See* Local Rule 7.1(c); Fed. R. Civ. P. 6(d). Rather than responding, Hall filed a motion on February 9, 2018, asking the Court to refrain from ruling on the defendants' motion so that he could file his own unrelated motions. [Record No. 225] Because "[a]ny such motion would become moot if the defendant[s'] pending motion to dismiss was granted," the Court denied Hall's motion, "preferring to rule on the defendants'

---

*See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion.").

pending motion in the normal course of proceedings and in accordance with the deadlines set forth in the local rules, rather than forcing the parties to incur the costs associated with filing and responding to additional motions." [Record No. 231 (citing Record No. 226)] The Court then reminded Hall that his response was "due by February 23, 2018." [Record No. 226]

Hall filed objections to the Order denying his request for a stay, a motion to amend that Order, and a motion for an extension of time to file a response to the defendants' motion on February 21, 2018. [Record Nos. 227, 228, 229] In support of his motion for an extension of time, Hall stated that his aunt, Rozena Grant, passed away on February 19, 2018, and that a visitation was scheduled for Friday, February 23, 2018 (the day of the response deadline imposed by the Local Rules), with the funeral scheduled for Saturday, February 24, 2018 (after the response deadline). [*See* Record Nos. 229; 238, ¶¶ 3-4.] As a result, Hall sought an extension of "at least sixty (60) days" to respond to the defendants' motion. [Record No. 229]

The defendants filed a response in opposition to the motion with Grant's obituary attached. [Record No. 230] The defendants accurately stated that the obituary "list[ed] the family of Ms. Grant," but "Tristan Hall [was] not listed as a nephew." [*Id.*] Additionally, the defendants argued that "[g]iven the rather limited issue before the court . . . the response time of twenty-one (21) days seem[ed] more than adequate." [*Id.*] The defendants also maintained that the extension was unwarranted because Hall's "continued failure to comply with orders of this court, refusal to attend his own deposition, and refusal to finalize the settlement, [had] created unnecessary delay." [*Id.*] However, they "[would] not object to an extension of a very few days if the court deem[ed] it appropriate in light of the death of Ms. Grant." [*Id.*]

The Court denied Hall's motion for an extension of time on February 27, 2018, after his response deadline had passed, and without having received a responsive filing. [Record

No. 231] The Court explained that "[t]he death of a family member can, of course, constitute 'good cause' for extending the deadline by which a party must act." [*Id.*] However, based on the obituary, it "appear[ed]" that Hall "was not actually related to Ms. Grant, although he was an honorary pallbearer at her funeral." [*Id.*] The Court then stated that:

> [i]n any event, the sixty day extension that Hall requests is not reasonable. The defendants' pending motion presents a relatively narrow issue, and is largely based on the same grounds as the motion to enforce settlement and motion for costs the defendants filed over three months ago. [Record No. 220] Hall failed to respond to that motion. [*See* Record No. 223.] Moreover, Hall has repeatedly failed to comply with Court-imposed deadlines, and the Court has already found that Hall's conduct "has resulted in obstruction and delay in the resolution of this action." [*Id.* at 5] Hall has now caused the parties to violate yet another Court-imposed deadline. [*Id.*; Record No. 224] Granting a sixty day extension under these circumstances to a party that has already caused such delay would be unwarranted.

[*Id.*]

Hall now seeks relief from that Order under Federal Rule of Civil Procedure 60(b). [Record Nos. 237, 238, 239] He argues that he is entitled to relief under Rule 60(b)(3) based on the defendants' "misrepresentation" of his relationship to Grant, under Rule 60(b)(1) based on the Court's "mistake," and under Rule 59 because the Court was "misled by a palpable defect and correcting the defect will result in a different disposition of the case." [*See* Record Nos. 237, 238.] Finally, Hall argues that the Court violated his due process rights, rendering the Judgment void. [Record No. 238, p. 5]

The theory underlying Hall's motions is that the defendants misrepresented his relationship to Rozena Grant, and the Court relied on that alleged misrepresentation in denying his motion for an extension of time. Denying the extension, in turn, had a "domino effect," inexorably leading to the Court's Order granting the defendant's motion to dismiss and renewed motion for costs. But none of the links in this chain of inferences withstands scrutiny.

The defendants' statements that the obituary "lists the family of Ms. Grant" and that "Tristan Hall is not listed as a nephew" are factually accurate. [Record No. 230-1] As a result, they are not "misrepresentations" warranting relief under Federal Rule of Civil Procedure 60(b)(3). *Jordan*, 1996 WL 528950 at *6 (stating that a "misrepresentation" is an "affirmative misstatement") (citing *Platsis v. E.F. Hutton & Co.*, 946 F.2d 38, 41-42 (6th Cir. 1991) (explaining that an "affirmative misstatement" must be "false in fact")). The Court's conclusion that, based on the obituary, it "appear[ed]" that Hall "was not actually related to Ms. Grant, although he was an honorary pallbearer at her funeral," was also not inaccurate. [Record No. 231] However, it now appears that Hall was omitted from the list of family members in Grant's obituary, not because Hall and Grant were unrelated, but because Grant was Hall's "great-aunt" rather than his "aunt." [Record No. 272, p. 2] Hall does not dispute this characterization of the relationship. [Record No. 280-1, p. 9 (explaining that terms like "great-aunt" and "great-uncle" are not commonly used in colloquial speech, and that "if my great-great-great grandfather were still alive, I would call him pawpaw").]

To the extent the Court stated that Hall was not related to someone that he was in fact related to, the statement may have been a "mistake." [Record No. 231] However, not every mistake provides a basis for relief under Federal Rule of Civil Procedure 60(b)(1). Instead, Rule 60(b)(1) allows for relief only where "the judge has made a *substantive* mistake of law or fact in the final judgment or order." *United States v. Reyes*, 307 F.3d 451, 455 (6th Cir. 2002) (emphasis added); *LeafGuard of Kentuckiana, Inc. v. LeafGuard of Kentucky, LLC*, 5: 15-cv-237-DCR, 2016 WL 3079792, at *2 (E.D. Ky. May 31, 2016).

Any mistake in characterizing the relationship between Hall and Grant was not a "substantive" mistake of law or fact warranting relief under Rule 60(b)(1). Hall's motions

overlook the important fact that the Court did not rely on the nature of his relationship to Grant in denying his motion for an extension of time. Although the Court stated that it "appear[ed]" that Hall "was not actually related to Ms. Grant," the Court *then went on to explain* that "[i]n any event"—*i.e.*, irrespective of that fact—Hall was not entitled to the extension for other reasons. [Record No. 231] The Court found that Hall's request for a sixty day extension to attend an event on the last day of the response period was "not reasonable," especially given the "relatively narrow issue" before the Court, which was similar to a motion filed over three months earlier. [*Id.*] Further, Hall had "repeatedly failed to comply with Court-imposed deadlines, and the Court ha[d] already found that Hall's conduct ha[d] resulted in obstruction and delay in the resolution of this action." [*Id.*] As a result, the Court determined that "[g]ranting a sixty day extension under th[o]se circumstances to a party that ha[d] already caused such delay would [have been] unwarranted." [*Id.*]

This decision was firmly within the Court's discretion. Although in certain circumstances "the court *may*, for good cause, extend [a deadline]," Fed. R. Civ. P. 6(b)(1)(A) (emphasis added), "the plain language of [this] rule demonstrates that the good cause standard in the rule is discretionary—even if a party demonstrates good cause, a district court is not required to grant a motion to extend time." *Ott v. Fed. Home Loan Mortg. Corp.*, 535 F. App'x 488, 489 (6th Cir. 2013). Hall's arguments all pertain to whether there was "good cause" for seeking the extension. But even assuming that there was "good cause" for seeking a sixty day extension, the Court still had discretion to deny the motion, as it did, for other reasons.

Accordingly, Hall has not demonstrated that the Court made a substantive mistake of law or fact in denying his request for an extension of time. Fed. R. Civ. P. 60(b)(1). And Hall's reliance on a non-substantive factual error is insufficient to obtain relief under Rule

60(b)(1). *See In re Bli Farms*, No. 03-10134-BC, 2005 WL 1692464, at *7 (E.D. Mich. July 16, 2005) (finding "no ground for relief under Rule 60(b)" where "the Court's factual error [did] not alter the basic reasoning [of its] opinion").

Similarly, Hall's argument that "the Court was misled by [a] palpable effect [*sic*] [and] correcting the defect will result in a different disposition," is unpersuasive. [Record No. 238, p. 4 (citing *Hansmann v. Fidelity Investments Inst.*, 326 F.3d 760, 767 (6th Cir. 2003).] Hall has not identified any "palpable defect" that the Court relied on such that correcting the defect would "result in a different disposition of the case."[8] [*Id.*]

Finally, Hall's argument that the Court's discretionary decision to deny his motion for an extension of time denied him due process and was therefore void, is unavailing. [Record No. 238, p. 5] The Court's decision "to rule on the defendants' pending motion in the normal course of proceedings and in accordance with the deadlines set forth in the local rules" did not deprive Hall of procedural due process. [Record No. 231 (citing Record No. 226)]

Accordingly, Hall's motions for reconsideration of the Court's Order denying his motion for an extension of time and for leave to file a response to the defendants' motion to dismiss and renewed motion for costs [Record Nos. 237, 238] will be denied.

---

[8] Any factual mistake in the Order would also be harmless error. *See In re Dalby*, Nos. 91-2008 to 91-2010 and 91-2060, 956 F.2d 268 (Table), 1992 WL 36112 (6th Cir. Feb. 26, 1992) (finding that when the alleged factual inaccuracies in a district court opinion "are minor and do not affect the rights of the parties or the outcome of the litigation in any manner, whatsoever . . . they may be considered harmless error." (citing Fed. R. Civ. P. 61)). And although "the harmless error rule is inapplicable to the analysis of Rule 60(b)(3) misbehavior," *Jordan*, 1996 WL 528950, at *8 n.6, there is clear and convincing evidence here that any misbehavior by the defendants had "no prejudicial effect on the outcome of the litigation." *Id.*

# IV.

Hall also moves to vacate the Court's Order granting the defendants' motion to dismiss and renewed motion for costs and the corresponding Judgment. [Record Nos. 239, 240] These motions are largely based on Hall's contention that the defendants misrepresented his relationship to Grant, and to that extent, they will be denied for the reasons stated in the preceding section. However, Hall also makes two additional arguments that will be considered in this section. First, he argues that the Court "relied on clearly erroneous findings of fact" in granting the defendants' motion to dismiss and renewed motion for costs because the Court's earlier determination that the parties entered into an enforceable contract was made without having "seen the purported settlement agreement" or having held an evidentiary hearing to "determine whether the purported emails were actually from the [p]laintiff" and to evaluate "his sincerity, state of mind, or duress[.]" [Record No. 239, pp. 5-6] Second, Hall argues that the Court erred in awarding costs to the defendants without first considering his ability to pay. [*Id.* at 5] He requests an evidentiary hearing on these issues. [Record No. 241]

The defendants' motion to enforce the parties' settlement agreement was based on the following series of e-mails. First, on August 18, 2017, Hall notified the defendants that he would not be accepting their settlement offer, stating, in relevant part, "[h]ow dare you all insult me with only a $1000 offer." [Record No. 212-2] Then, on October 13, 2017, Hall reversed course and sent the defendants the following counter-offer: "[i]f you can still do the $1000, I'll take it and you can go ahead and file an agreed order with my permission." [Record No. 220-1, p. 2] Hall explained that he "was in a car wreck a couple of weeks ago" and had made the "tough decision" to settle "because [although] [he] didn't really want to take the money, [he] could use it." [Record No. 220-1]

The defendants sent Hall the following response:

> We have accepted your demand of $1,000.00 to settle this case. I have requested a check payable to you in the amount of $1,000, and expect to receive it within 7 to 10 days. At that time we will meet to exchange the check for your signature on a short release and agreed order of dismissal. I will revise the agreed order of dismissal and will file it at that time.
>
> Please acknowledge and I will advise the court we have settled.

[*Id.* at 1] Hall immediately responded "[t]hat's fine." [*Id.*] He notified the other defendants of the settlement in an e-mail stating that "[a]fter considerable time and contemplation" he had "decided to let go of the lawsuit" and had "found closure." [Record No. 255-1, p. 15] He stated that opposing counsel was preparing an agreed order of dismissal "[a]t [his] request," and there would "not be an appeal or any further pleadings." [*Id.*]

The defendants filed a notice of settlement on October 16, 2017. [Record No. 218] The Court vacated all deadlines and directed the parties to tender a proposed Agreed Order of Dismissal by November 16, 2017. [Record No. 219] The defendants then sent Hall a copy of the $1,000.00 settlement check, a settlement agreement and release, and an agreed order of dismissal, with instructions to return a signed and notarized copy of the settlement agreement and release and to advise that the agreed order of dismissal was agreeable. [Record No. 220-2] The defendants stated that they would send the $1,000.00 settlement check via first-class mail upon receipt of the settlement documents. [*Id.*]

Hall delayed, but indicated that he had, or would, sign the settlement documents and return them to the defendants. He wrote to the defendants on November 6, 2017: "I will have the notarized documents in the mail this afternoon. Sorry for the delay." [Record No. 220-3] And the following day he wrote: "[d]ocuments went out yesterday. Again, sorry for the delay."

[Record No. 220-4]  The defendants responded that they had not received anything, and would need to arrange a meeting if the documents were not received promptly. [Record No. 220-5]

Hall expressed his desire to back out of the settlement agreement for the first time on November 10, 2017. [Record No. 220-5]  He stated that, although he "fully intended to settle," a new indictment was returned against him, and "[u]ntil [he] determined what ha[d] occurred and who [was] involved, there [would] be no settlement or other decisions made."  [*Id.*]  The defendants were thus unable to tender an agreed order of dismissal by November 16, 2017, as required by the Court's Order.  [Record No. 219]   They then filed a motion to enforce their settlement agreement with Hall on November 22, 2017.  [Record No. 220]

Hall did not file a response to the motion.  After reviewing the e-mail exchange between the parties, the Court found that the parties had reached a clear and unambiguous agreement on all material terms of their settlement and were bound to that agreement, despite the fact that Hall refused to sign the release or agreed order of dismissal.  [Record No. 223]  Accordingly, the Court directed the parties to tender an Agreed Order of Dismissal within fifteen days.  [*Id.*]  However, Hall immediately made clear that he intended to ignore the Court's Order, informing the defendants that he "won't be signing anything." [Record No. 224-1]  As a result, the defendants filed a motion to dismiss and a renewed motion for costs.  [Record No. 224]  The Court granted the motion, again without having received a response from Hall, after the deadline to file a response had passed.  [Record No. 233]

Hall now argues for the first time, post-judgment, that an evidentiary hearing was required to determine "his sincerity, state of mind, or duress" at the time that he entered into the parties' settlement agreement.  [Record Nos. 239, 241]  He argues that by granting the

defendants' motion without holding an evidentiary hearing (which no party requested), the Court denied him of due process and, therefore, the Judgment is "void" under Rule 60(b)(4).

"Rule 60(b)(4) embodies an important distinction between a void judgment and an erroneous one[.]" *Jalapeno Property Mgmt., LLC v. Dukas*, 265 F.3d 506, 515 (6th Cir. 2001). A void judgment can be challenged under Rule 60(b)(4), whereas an erroneous judgment is "subject only to direct attack." *Id.* "In the interest of finality, the concept of void judgments is narrowly construed." *Id.* at 515. "[A] judgment is void if a court entered an order outside its legal powers." *Id.* at 516. This only occurs "in the rare instance where a judgment is premised *either on a certain type of jurisdictional error or on a violation of due process* that deprives a party of notice or the opportunity to be heard." *Northridge Church v. Charter Twp. of Plymouth*, 647 F.3d 606, 611 (6th Cir. 2011) (citation omitted) (emphasis in original).

Hall has not demonstrated that the Order enforcing the parties' settlement agreement was entered in violation of due process. Hall had over two months to respond to that motion before the Court ruled on it, long after the deadline for filing a response had passed, without having received a response from Hall. [*See* Record No. 223.] Hall was not denied the opportunity to be heard on that motion. Instead, he simply chose not to respond.[9]

---

[9] To be sure, the Court initially scheduled a hearing on the motion, which had to be canceled due to inclement weather. [Record Nos. 221, 222] But scheduling a hearing on the motion did not, as Hall seems to believe, relieve him of his obligation to file a response within the period set by Local Rules. [*See* Record No. 237-1, ¶ 2 (arguing that no response was required because the Court scheduled a hearing and "did not direct the [p]laintiff to file a response.").] *But see* Local Rule 7.1(c) ("Unless otherwise ordered by the Court, a party opposing a motion must file a response within 21 days of service of the motion."); *Pilgrim v. Littlefield*, 92 F.3d 413 (6th Cir. 1996) ("[T]he lenient treatment generally accorded to pro se litigants has limits. Where, for example, a pro se litigant fails to comply with an easily understood court-imposed deadline, there is no basis for treating that party more generously than a represented litigant."). Further, the Court did not rule on the motion until ten days after the hearing was canceled

Further, Hall has not shown that an evidentiary hearing was required. "Ordinarily, an evidentiary hearing is required where facts material to an agreement are disputed. However, no evidentiary hearing is required where an agreement is clear and unambiguous and no issue of fact is present." *RE/MAX Intern., Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001) (citations omitted). The e-mails between the parties demonstrated that they had reached an agreement on all material terms of the settlement agreement. [*See* Record No. 223 (holding that "the general requirements for forming a contract were met, and the parties entered into valid settlement agreement").] The parties did not request an evidentiary hearing before the Court ruled on the defendants' motion and, because Hall failed to respond to the motion, no material facts were in dispute at that time. As a result, no evidentiary hearing was required.[10]

Hall's post-judgment argument that he only entered into the settlement agreement under duress does not change this result. [*See* Record No. 239.] "Rule 60(b) does not allow a defeated litigant a second chance to convince the court to rule in his or her favor by presenting new explanations, legal theories, or proof. The grant of relief under Rule 60(b) is

_____

(contrary to Hall's representation that the Order was issued "[t]hat same day"), and had still not received a response at that time. [*See id.*; Record No. 239, ¶ 6.]

[10] Hall also argues that the Court was required to review the settlement documents that he refused to sign before finding that an agreement was reached as to all material terms. [Record No. 239, pp. 5-6] However, those documents were only necessary to memorialize the agreement the parties had reached via e-mail, and were not essential to establishing an enforceable contract. *See RE/MAX*, 271 F.3d at 646 ("The existence of a valid agreement is not diminished by the fact that the parties have yet to memorialize the agreement. When parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the . . . agreement.").

circumscribed by public policy favoring finality of judgments and termination of litigation." *Tyler v. Anderson*, 749 F.3d 499, 509 (6th Cir. 2014) (citations omitted).[11]

Hall's second argument (i.e., that the Court's Order awarding costs to the defendants was void because the Court did not consider his ability to pay before awarding costs to the defendants) fares no better. He relies on case law pertaining to the imposition of sanctions under Federal Rule of Civil Procedure 11. [Record No. 239, p. 5] "[D]eterrence is the principal goal" of Rule 11 sanctions. *Jackson v. Law Firm of O'Hara, Ruberg*, *Osborne & Taylor*, 875 F.2d 1224, 1229 (6th Cir. 1989). "[T]o protect a party from punitive awards in favor of the deterrent purposes of Rule 11," *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 375 (6th Cir. 1996), courts are required to consider a party's ability to pay before imposing Rule 11 sanctions. *Jackson*, 875 F.2d at 1230.

However, Hall was not sanctioned pursuant to Rule 11. He was sanctioned pursuant to the Court's inherent powers. [*See* Record No. 223, p. 4; Record No. 233, p. 4.] Unlike Rule 11, the Court's inherent powers are not limited to the purpose of deterrence, but include "the inherent power to punish with sanctions those who litigate in bad faith." *Stalley v. Methodist Healthcare*, 517 F.3d 911, 920 (6th Cir. 2008). This power is "necessarily vested in courts to

---

[11] This argument is also unsupported by the record. Hall relies almost entirely on an e-mail he sent the defendants on August 29, 2017, stating that "[t]he only reason I'm even considering settlement is because your clients are intimidating . . . me." [Record No. 237-2, Exhibit E] However, that e-mail was sent nearly two months before the parties' entered into their settlement agreement and is contradicted by an e-mail Hall sent the day before making his settlement demand stating that he had "decided to let go of the lawsuit" "[a]fter considerable time and contemplation" because he had "found closure," [Record No. 255-1, Exhibit 1, p. 15], the statements he made contemporaneous with his settlement demand that he "was in a car wreck a couple of weeks ago" and made the "tough decision" to settle "[a]gainst his own pride, because [although] [he] didn't really want to take the money, [he] could use it," [Record No. 220-1], and his statements after entering into the settlement agreement that he had "fully intended to settle" because he "was simply tired of [this] litigation." [Record No. 220-5]

manage their own affairs so as to achieve the orderly and expeditious disposition of cases," and includes the "power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quotations and citations omitted). Although the Court's "inherent powers must be exercised with restraint and discretion," and it is important "to fashion an appropriate sanction for conduct which abuses the judicial process," "an assessment of attorney's fees," such as the one in this case, "is undoubtedly within a court's inherent power." *Id.* at 44-45.

Hall's argument that his *pro se* status shields him from the award of attorney's fees also fails.[12] [Record No. 241, p. 2-3] The Court's "inherent power is not limited to sanctioning attorneys only; [it] can sanction a party as well." *Stalley*, 517 F.3d at 920. Where, as here, a *pro se* litigant's bad faith conduct in violation of a Court Order causes an opposing party to incur excessive costs, the award of attorney's fees is justified. [*See* Record Nos. 224; 233.]

Accordingly, Hall's motions to vacate the Order granting the defendants' motion to dismiss and renewed motion for costs and the corresponding Judgment, and his motion for an evidentiary hearing [Record Nos. 239, 240, 241] will be denied.

**V.**

Hall also seeks Rule 11 sanctions and a show cause order against the attorney for Defendants Bird and City of Williamsburg. [Record Nos. 242, 243] Federal Rule of Civil Procedure 11(c) authorizes the Court to impose sanctions in certain circumstances. However, a motion for sanctions "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days

---

[12] This argument is also ironic given that Hall has "literally, a dozen times or more, asked to be held to a higher standard than a typical pro se litigant." [Record No. 255-1, p. 47]

after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2). Thus, "a party seeking sanctions must follow a two-step process: first, serve the Rule 11 motion on the opposing party for a designated period (at least twenty-one days); and then file the motion with the court." *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997). Hall failed to follow that process here, as the defendants only learned of Hall's motion for sanctions on the day it was filed with the Court. [Record No. 273, p. 2] Rule 11 also provides that the Court may, on its own initiative, "order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3). Hall asks the Court to invoke that authority here to issue a show cause order to the defendants' attorney. [Record No. 243]

Hall's motions are based, in part, on the fact that the defendants' attached Rozena Grants' obituary to their response to Hall's motion for an extension of time and observed that it "list[ed] the family of Ms. Grant," but "Tristan Hall [was] not listed as a nephew." [Record No. 230] However, the defendants' statement was factually accurate. And attempting to rebut Hall's representation that Grant was his "aunt" was not an improper purpose. Indeed, it appears that Hall's filing used "aunt" in a colloquial sense, rather than to identify a particular familial relationship. [*See* Record No. 280-1, p. 9.]

Next, Hall argues that the defendants misleadingly attached his e-mail stating that "I won't be signing anything" to their motion to dismiss and renewed motion for costs while omitting two further e-mails: (i) his follow-up e-mail stating that he had not seen the Order and asking the defendants to send it to him; and (ii) the defendants' response sending him a copy of the Order. [Record No. 242, p. 5] But neither of these e-mails has any bearing on whether Hall failed to comply with the Order enforcing the parties' settlement agreement, and

there is no indication that Hall ever retracted his initial statement that "I won't be signing anything" or displayed any willingness to comply with that Order at any time. The defendants' attorney's decision to omit irrelevant e-mails from its motion was reasonable, and not sanctionable conduct. *See Ridder*, 109 F.3d at 293 ("In this circuit the test for imposition of Rule 11 sanctions is whether the attorney's conduct was reasonable under the circumstances.").

Finally, Hall argues that the defendants, for an improper purpose, misleadingly characterized his conduct as "refusing" to attend his own deposition and attempting to back out of the parties' settlement agreement "in bad faith." [Record No. 242, pp. 7-8] Hall's arguments are based on factual assertions that are not supported by the record. [*See* Record No. 237-2; Record No. 243, p. 2; Record No. 236-1; Record No. 236-2; Record No. 255-1; Record No. 272-1.] And the Court finds it unnecessary to issue a discretionary order requiring the defendants, post-judgment, to incur the expense of responding to an Order to show cause why their conduct did not violate Rule 11(b). Accordingly, Hall's motions for sanctions and for a show cause order [Record Nos. 242, 243] will be denied.

## VI.

Finally, Hall has requested an extension of time to file a notice of appeal. [Record No. 248] Ordinarily, a notice of appeal "must be filed with the district clerk within 30 days after entry of the judgment[.]" Fed. R. App. P. 4(a)(1)(A). However, where, as here, a party files post-judgment motions, "the time to file an appeal runs . . . from the entry of the order disposing of the last such remaining motion." Fed. R. App. P. 4(a)(4)(A). Because Hall's motion was filed before the time to file an appeal began to run, it will be denied as premature. Hall will have 30 days from the entry of this Order to file a notice of appeal. The parties are advised that the Court is not inclined to grant a further extension of that deadline.

**VII.**

For the foregoing reasons, it is hereby

**ORDERED** as follows:

1.     Plaintiff Tristan Hall's post-judgment motions [Record Nos. 237, 238, 239, 240, 241, 242, 243, 244, 246, and 248] are **DENIED**.

2.     Any future motions raising issues that have already been addressed by the Court will be summarily dismissed.

This 18th day of May, 2018.

Signed By:

*Danny C. Reeves* DCR

United States District Judge